EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Benny Tosado Cortés<br><br>    Recurrido<br><br>        v.<br><br>  Autoridad de Energía Eléctrica<br><br>    Peticionaria | Certiorari<br><br>2005 TSPR 113<br><br>165 DPR ____ |

Número del Caso: CC-2003-675

Fecha: 12 de agosto de 2005

Tribunal de Circuito de Apelaciones:

                Circuito Regional I, Panel III

Juez Ponente:

                Hon. Rafael Ortiz Carrión

Abogado de la Parte Recurrida:

                Lcdo. Michael Corona Muñoz

Abogado de la Parte Peticionaria:

                Lcdo. Juan R. Ortiz Ramírez


Materia: Formulación de Cargos


Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Benny Tosado Cortés

   Recurrido

       v.                        CC-2003-675    Certiorari

Autoridad de Energía Eléctrica

   Peticionaria

Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 12 de agosto de 2005.

El presente recurso requiere que evaluemos el procedimiento disciplinario interno mediante el cual se ventilan los cargos presentados contra los empleados gerenciales en la Autoridad de Energía Eléctrica (en adelante AEE). En particular, debemos determinar si la resolución emitida por un oficial examinador como parte del mencionado procedimiento disciplinario constituye la decisión final de la referida corporación pública. Veamos.

I

Mientras el Sr. Benny Tosado Cortés (en adelante señor Tosado Cortés) se desempeñaba como supervisor de la AEE, se le formularon cargos por

alegadamente infringir ciertas reglas de conducta promulgadas por la mencionada corporación pública. En vista de ello, la Oficina de Asuntos Laborales de la AEE refirió el asunto a un Oficial Examinador, quien presidió la vista administrativa en la cual se dilucidaron los cargos contra el señor Tosado Cortés. Luego de los trámites pertinentes, el Oficial Examinador emitió resolución en la cual concluyó que el señor Tosado Cortés no había violado las Reglas de Conducta, según se le imputó.[1]

Insatisfecha, la AEE acudió ante el entonces Tribunal de Circuito de Apelaciones. Sin embargo, dicho foro se declaró sin jurisdicción para entender en el recurso. Al interpretar el procedimiento disciplinario llevado a cabo contra el señor Tosado Cortés junto con las disposiciones del Reglamento para los Procedimientos de Adjudicación de Querellas de la AEE,[2] concluyó que la resolución emitida por el Oficial Examinador no era la decisión final de la agencia, por lo cual no era revisable judicialmente.

Inconforme aún, la AEE presentó ante nos el presente recurso de *certiorari*. Aduce, en esencia, que la decisión emitida por el Oficial Examinador en el caso de autos no requiere de ningún otro trámite administrativo para hacerla valer, razón por la cual constituye la decisión final de la

---

[1] Dicha resolución contenía las advertencias legales pertinentes al derecho de solicitar reconsideración y revisión judicial, así como los términos para ello.

[2] En vigor desde el 12 de febrero de 1990, Reglamento Núm. 4109.

AEE. Vista la petición, acordamos expedir. Concedimos término al señor Tosado Cortés para que presentara su posición. Éste compareció y repitió los argumentos esbozados por la AEE de que la decisión administrativa en este caso es una final. Contando con la comparecencia de ambas partes, resolvemos.

II

A

La Ley de la Judicatura de 1994, vigente al momento de los hechos, confería competencia al antiguo Tribunal de Circuito de Apelaciones para revisar las resoluciones de cualquier agencia administrativa, a tenor con lo establecido en la Ley de Procedimiento Administrativo Uniforme (en adelante LPAU), 3 L.P.R.A. secs. 2101 *et seq.*[3] Por su parte, la LPAU dispone en su sección 4.2 que:

> Una parte adversamente afectada por **una orden o resolución final de una agencia y que haya agotado todos los remedios provistos por la agencia o por el organismo administrativo apelativo correspondiente** podrá presentar una solicitud de revisión ante el Tribunal de Circuito de Apelaciones, dentro de un término de treinta (30) días contados a partir de la fecha del archivo en autos de la copia de la notificación de la orden o resolución final de la agencia o a partir de la fecha aplicable de las dispuestas en la sec. 2165 de este título...
> [....]
> Una orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente. La disposición interlocutoria de la agencia podrá ser objeto de

---

[3] La Ley de la Judicatura de 2003, 4 L.P.R.A. secs. 24 *et seq.*, concede igual competencia al Tribunal de Apelaciones, con la diferencia de que el recurso de revisión judicial se acoge como cuestión de derecho.

un señalamiento de error en el recurso de revisión de la orden o resolución final de la agencia. (Énfasis nuestro) 3 L.P.R.A. sec. 2172.

En vista de lo pautado en la referida sección, una orden o resolución administrativa debe cumplir con dos requisitos para que ésta sea revisable judicialmente, a saber: (1) que la resolución que se pretenda revisar sea final y no interlocutoria y (2) que la parte adversamente afectada por la orden haya agotado los remedios provistos por la agencia. Oficina de la Procuradora del Paciente v. Aseguradora MCS, IPA 603, res. el 22 de septiembre de 2004, 2004 TSPR 153; Junta Examinadora de Tecnólogos Médicos v. Elías, 144 D.P.R. 483 (1997). Respecto a este asunto, nos señala el Profesor Demetrio Fernández Quiñones lo siguiente:

> Una vez el organismo administrativo ha rendido su decisión en el caso y la 'parte adversamente afectada' ha agotado todos los remedios administrativos disponibles dentro del organismo, se puede presentar la solicitud de la revisión judicial. [...] Para interponer el recurso, la decisión administrativa tiene que ser 'final' y además debe ser revisable. La decisión administrativa es final cuando ha decidido todas las controversias y no deja pendiente ninguna para ser decidida en el futuro. Es revisable cuando la parte afectada por ella haya cumplido con todos los requisitos y haya agotado todos los remedios administrativos disponibles. Demetrio Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 2da ed., FORUM, 2001, Sec. 9.3, pág. 533.

La LPAU, aunque no define el concepto "orden o resolución final", nos ilustra sobre su contenido esencial. Así, una orden o resolución administrativa final "deberá incluir y exponer separadamente determinaciones de hecho",

además de las "conclusiones de derecho que fundamentan la adjudicación" y la disponibilidad del recurso de reconsideración o revisión según sea el caso. 3 L.P.R.A. sec. 2164. Igualmente, añade que "[l]a orden o resolución deberá ser firmada por el jefe de la agencia o cualquier otro funcionario autorizado por ley". *Id.*

Hemos expresado anteriormente que la orden o resolución final es aquella que pone fin a todas las controversias dilucidadas ante la agencia y cuyo efecto es sustancial sobre las partes. Padilla Falú v. Administración de Viviendas, res. el 26 de septiembre de 2001, 2001 TSPR 130; Junta Examinadora de Tecnólogos Médicos v. Elías, *supra*. Además, dicha determinación final debe ser emitida "por la última autoridad decisoria o adjudicativa de la agencia administrativa". Bird Const. Corp. v. A.E.E., 152 D.P.R. 928, 936 (2000). Ello implica que debe contener la última posición asumida por el ente autorizado a emitir la decisión a nombre de la agencia, y no meras recomendaciones formuladas por un oficial examinador. *Véase* Padilla Falú v. Administración de Viviendas, *supra*.

Sobre esto último, resulta pertinente destacar lo dispuesto en la sección 3.3 de la LPAU, la cual establece en parte que:

> Toda agencia podrá designar oficiales examinadores para presidir los procedimientos de adjudicación que se celebren en ella, los cuales no tendrán que ser necesariamente abogados, particularmente cuando el procedimiento en cuestión es uno informal.

El jefe de la agencia podrá delegar la autoridad de adjudicar a uno o más funcionarios o empleados de su agencia. A estos funcionarios o empleados se les designará con el título de jueces administrativos. 3 L.P.R.A. sec. 2153.

El objetivo que persigue esta sección descansa en consideraciones prácticas. Resulta básicamente imposible para el jefe de una agencia presidir todas las vistas y adjudicar todas las controversias presentadas ante la oficina bajo su dirección, razón por la cual necesita delegar esas funciones. *Véase*, Fernández Quiñones, *supra*, sec. 4.3, pág. 186; B. Schwartz, *Administrative Law*, 3ra ed., Little, Brown & Co., 1991, sec. 6.11, pág. 324. Además, el jefe del organismo administrativo —al igual que el sistema adjudicativo— se beneficia de la experiencia, el conocimiento y la capacidad de aquellas personas a las cuales se les asignan dichas tareas. Con ello se logra, igualmente, que la agencia pueda manejar las querellas presentadas y, al mismo tiempo, mantener su capacidad para desarrollar la política pública que inspiró su creación. Richard J. Pierce, *Administrative Law Treatise*, 4ta ed., Aspen Law & Bussiness, sec. 8.6, pág. 552.

Como se puede apreciar, la sección 3.3 de la LPAU denomina dos tipos de agentes que intervienen en el procedimiento adjudicativo a nombre de la agencia, entiéndase, el oficial examinador y el juez administrativo. Según la redacción de la aludida disposición legal, sólo este último posee la facultad para adjudicar controversias, pues dicha autoridad le es delegada por el jefe de la

agencia. Esta bifurcación de funciones, igualmente surge de la sección 3.13(a) de la LPAU, la cual preceptúa, en lo pertinente, que "el funcionario que presida la [vista] preparará un informe para la consideración de la agencia, o emitirá la decisión por escrito si le ha sido delegada la autoridad para ello". 3 L.P.R.A. sec. 2163(a).

Ahora bien, al analizar la naturaleza de la decisión administrativa no podemos considerar, exclusivamente, la denominación que se le ha dado al funcionario o empleado que la emite dentro del esquema procesal administrativo. Es decir, el título de oficial examinador o juez administrativo, sin más, no define el carácter de sus funciones y, por tanto, del producto de su trabajo. Resulta imperativo, además, evaluar las facultades que le han sido delegadas y el tipo de decisión que éstos emiten. El alcance y las consecuencias de sus determinaciones dependerán "de lo que disponga el estatuto, de la estructura procesal de la agencia y del poder que se le reconozca al examinador o juez". Fernández Quiñones, *supra*, sec. 4.4, pág. 190. Como consecuencia de lo anterior, es menester considerar con detenimiento estos elementos para determinar si, dado el estado de derecho vigente al momento del procedimiento administrativo, la decisión que se pretende revisar judicialmente constituye un informe o una recomendación que carece de finalidad o, por el contrario, configura la decisión final de la persona con autoridad para adjudicar la controversia.

Por ello, nos corresponde evaluar el procedimiento aplicable al caso de autos para determinar sobre quién recae la facultad de adjudicar la controversia.

B

La Autoridad de Energía Eléctrica fue creada al amparo de la Ley Núm. 83 de 2 de mayo de 1941,[4] 22 L.P.R.A. secs. 191 *et seq.*, como una corporación pública e instrumentalidad gubernamental autónoma del Estado Libre Asociado de Puerto Rico. Ésta es controlada por una Junta de Gobierno que, a su vez, designa a un Director Ejecutivo en el cual delega los poderes y deberes que estime propios. Este Director Ejecutivo, entre otras responsabilidades, tiene a su cargo la supervisión general de los funcionarios, empleados y agentes de la AEE. 22 L.P.R.A. sec. 194.

Como corolario de este poder de supervisión, la AEE adoptó el Manual sobre Procedimientos Disciplinarios para Empleados Unionados y Gerenciales. Éste contiene las pautas aplicables a la formulación de cargos y a la celebración de vistas adjudicativas en casos de violaciones a las reglas de conducta promulgadas por la mencionada corporación pública. Dicho compendio agrupa, entre otros, los

---

[4] Originalmente, dicha entidad fue denominada como la Autoridad de la Fuentes Fluviales.

procedimientos disciplinarios aplicables a los empleados gerenciales.[5]

A tenor con la sección III del Procedimiento Disciplinario de la AEE --la cual es aplicable tanto a empleados unionados como a empleados gerenciales-- una vez se le notifica al empleado la formulación de los cargos, éste puede solicitar una vista administrativa ante un oficial examinador. El empleado tiene derecho a estar representado por su abogado, si así lo desea. Luego de culminada la vista, el oficial examinador **"somete su decisión al Director Ejecutivo para ser puesta en vigor"**.[6] Sin embargo, "[e]n los casos de separación definitiva, la decisión separando al empleado **es aprobada por el Director Ejecutivo"**.[7]

En lo específico, el procedimiento disciplinario aplicable exclusivamente a los empleados gerenciales dispone que, una vez el empleado gerencial es notificado de los cargos formulados en su contra, éste puede solicitar a la Subdivisión de Relaciones Industriales de la AEE la celebración de una vista administrativa. Esta vista se celebra ante un ex-juez del Tribunal General de Justicia de

---

[5] También contiene los procedimientos disciplinarios aplicables a los empleados unionados, según se hayan estipulado en sus respectivos convenios colectivos.

[6] Sección III, inciso (4) del Procedimiento Disciplinario de la AEE. (Énfasis nuestro).

[7] *Id.*, inciso (5). (Énfasis nuestro).

Puerto Rico, quien actúa como Oficial Examinador. Culminada la vista administrativa:

> El Oficial Examinador **somete su decisión del caso** al Director Ejecutivo por conducto del Jefe de la Subdivisión de Relaciones Industriales a la Oficina de Procedimientos Especiales de la Subdivisión de Relaciones Industriales **para ser puesta en vigor**. Copia de esta decisión es remitida por el Oficial Examinador al empleado gerencial y al abogado de la Oficina de Procedimientos Especiales. En aquellos casos meritorios, el Director Ejecutivo puede ejercer clemencia administrativa al poner en vigor la decisión de dicho Oficial Examinador. Sección 152.2, Procedimiento Disciplinario para Empleados Gerenciales, inciso M. (Énfasis nuestro).

Al evaluar el contenido del referido manual, partimos de la premisa de que las partes no cuestionan su aplicabilidad al caso de autos ni la legitimidad de su adopción por parte de la AEE.[8] Sin embargo, entendemos meritorio expresarnos sobre esto último para aclarar los contornos que delimitan la adopción de este tipo de normas en el campo administrativo.

C

Conforme a la LPAU, las agencias administrativas tienen que cumplir con ciertos requisitos al momento de formular y aprobar sus reglamentos. Estas formalidades se pueden resumir en las siguientes: (1) notificar al público la reglamentación que ha de aprobarse; (2) proveer una oportunidad para la participación ciudadana; (3) presentar la reglamentación ante el Departamento de Estado para su

---

[8] De hecho, las partes aceptan que el mencionado procedimiento es el aplicable a la situación del señor Tosado Cortés.

aprobación, y (4) publicar la reglamentación. 3 L.P.R.A. secs. 2121-2135; Mun. de San Juan v. J.C.A., 152 D.P.R. 673 (2000).

Sin embargo, no toda regulación está sujeta a este procedimiento de aprobación. La LPAU excluye expresamente de la definición de regla o reglamento, entre otras, a aquellas:

> Reglas relacionadas con la administración interna de la agencia que no afectan directa y sustancialmente los derechos o los procedimientos o prácticas disponibles para el público en general. 3 L.P.R.A. sec. 2102(l)(1).

Es decir, para fines de adopción de reglas y reglamentos, la propia LPAU reconoce dos (2) clasificaciones generales, a saber; las reglas legislativas y las reglas no legislativas.

Anteriormente hemos definido "regla legislativa" como "aquella que crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley". Asociación de Maestros de P.R. v. Comisión de Relaciones del Trabajo del Servicio Público, res. el 31 de marzo de 2003, 2003 TSPR 47. Por definición, esta regla es la que impacta directamente a los ciudadanos en general y obliga con fuerza de ley a la agencia, quien no tiene discreción para rechazarla. _Id._ Es por ello que las agencias deben adoptarlas en estricta observación de los requisitos mencionados, dándole oportunidad a la ciudadanía para conocerlas y expresar cualquier reparo a ellas antes de su aprobación final. _Véase_ Asociación de Farmacias de la

Comunidad v. Depto. de Salud, res. el 5 de febrero de 2002, 2002 TSPR 13.

Por otra parte, las reglas no legislativas agrupan varias normas administrativas que, por el propósito que persiguen, no requieren el cumplimiento de las formalidades establecidas en la LPAU. Ejemplo de ellas son las reglas interpretativas, las cuales se crean para aclarar la ley, las reglas o los reglamentos administrados por la agencia, para fijar directrices y para pautar la discreción administrativa. Agosto Serrano v. F.S.E., 132 D.P.R. 866 (1993).

Asimismo, existen otras reglas no legislativas que van dirigidas a la administración interna de la agencia y que, por no afectar directa y sustancialmente los derechos de personas ajenas a la operación de la empresa gubernamental, no requieren su notificación a la ciudadanía ni la oportunidad de que ésta participe en el proceso de adopción. Esta doctrina es ampliamente reconocida en el Derecho Administrativo. Al igual que la LPAU, el Administrative Procedure Act (en adelante APA) reconoce que, al aprobarse este tipo de norma, no se requiere su notificación al público ni que se le brinde oportunidad a la ciudadanía para presentar sus comentarios sobre el particular.[9] Igualmente, el Código Modelo de Procedimiento

---

[9] El APA expresamente excluye de las disposiciones relativas a la notificación y participación de la ciudadanía en el proceso de adopción de reglas a todo asunto relacionado a

Administrativo Estatal instituye una excepción a los requisitos de adopción de reglas y reglamentos cuando se trata de:

> a rule concerning only the internal management of an agency which does not directly and substantially affect the procedural or substantive rights or duties of any segment of the public. Model State Administrative Procedure Act, sec. 3-116(1) (1981).

La inaplicabilidad de los requisitos de reglamentación a este tipo de norma constituye un reconocimiento expreso por parte de la Asamblea Legislativa de la flexibilidad que necesita la agencia al regular estos asuntos internos. *Véase* Stein, Mitchell & Mezines, *Administrative Law*, sec. 15.02(4), pág. 15-9 (2004). No cabe duda del alto costo operacional --y de la disminución en la efectividad y en la eficiencia-- que implicaría para las agencias tener que formular sus reglamentos o instrucciones internas aplicables a sus empleados utilizando el proceso de reglamentación como si se tratara de reglas legislativas. Arthur Earl Bonfield, *State Administrative Rule Making*, sec. 6.17.2, pág. 400 (1986). Además, serían mínimos los beneficios que podría obtener el público en general si se les notificara de la propuesta reglamentación interna de la agencia y se les brindara la oportunidad de opinar sobre ésta. *Id*. Incluso, no nos parece adecuada la intervención de la ciudadanía en la elaboración de las normas referentes a las relaciones de la corporación pública con sus empleados, asunto

---

la administración de la agencia y de su personal. 5 USC sec. 553(a)(2).

expresamente delegado a su Junta de Gobierno y a su Director Ejecutivo.

No obstante lo anterior, debe quedar claro que las reglas de gobierno interno aprobadas por la agencia no deben impactar "directa y sustancialmente" los derechos de la ciudadanía en general. Mientras estas normas estén dirigidas a las operaciones internas de la agencia, y apliquen a sus empleados, funcionarios o agentes, podrán ser adoptadas con la flexibilidad que el Derecho Administrativo les reconoce. *Id.*; Stewart v. Smith, 673 F 2d. 485 (D.C. Cir. 1982); U.S. v. Hayes, 325 F. 2d 307 (4th Cir. 1963). Ahora bien, esta excepción no aplica en la medida que la norma afecte directa y sustancialmente derechos de terceras personas ajenas a la operación de la agencia. Charles Koch, *Administrative Law and Practice*, Vol. 1, sec. 3.34, pág. 163 (1985); James O´Reilly, *Administrative Rulemaking*, sec. 3.06, págs. 47-48 (1983); *Véase* además Tunik v. Merit Systems Protection Board, 407 F. 3d. 1326 (D.C. Cir. 2005); Joseph v. U.S. Civil Service Commission, 554 F 2d. 1140 (D.C. Cir. 1977).

En el caso de autos, la AEE adoptó el Manual sobre Procedimientos Disciplinarios para Empleados Unionados y Gerenciales. Éste contiene ciertas normas que han de regir los procedimientos disciplinarios de sus empleados desde la investigación de los hechos que podrían configurar una violación a las Reglas de Conducta hasta la celebración de una vista administrativa para dilucidar los cargos presentados contra éstos. Sin embargo, dicho procedimiento

no va dirigido a persona alguna fuera de la AEE, ni impacta directa y sustancialmente al público en general. Se trata, pues, del ejercicio legítimo de regular y controlar la conducta de los empleados de la agencia para mantener el orden y lograr la efectividad necesaria para cumplir con la encomienda que propulsó la creación de la AEE. En vista de ello, somos del criterio que la AEE podía reglamentar el procedimiento disciplinario aludido mediante el referido manual sin que ello se entienda como un subterfugio del procedimiento de reglamentación pautado en la LPAU. *Cf.* Asociación de Maestros de P.R. v. Comisión de Relaciones del Trabajo del Servicio Público, *supra*; Asociación de Farmacias de la Comunidad v. Depto. de Salud, *supra*.

Visto lo anterior, evaluemos los argumentos de las partes.

### III

En el caso de autos, las partes están contestes en que la decisión emitida por el Oficial Examinador en el procedimiento llevado a cabo contra el señor Tosado Cortés constituye la decisión final de la agencia. Según éstos, no quedan mayores trámites ante la AEE, por lo que dicha decisión resulta ser final. Les asiste la razón. Veamos.

La ley habilitadora de la AEE confirió autoridad al Director Ejecutivo sobre todo asunto concerniente a la supervisión del personal que labora para dicha corporación. Ello necesariamente conlleva la supervisión y control de los empleados gerenciales. Sin embargo, al adoptar el

Manual sobre Procedimientos Disciplinarios para Empleados Unionados y Gerenciales de la AEE, y conforme a las disposiciones de la LPAU, el Director Ejecutivo encomendó a otras personas algunas de las facultades que se derivan de dicho poder.

Según se desprende del referido manual, la facultad adjudicativa de la agencia fue delegada expresamente al Oficial Examinador que preside la vista administrativa en la cual se dilucidan presuntas violaciones a las Reglas de Conducta. A tenor con lo establecido en este manual, la decisión del Oficial Examinador constituye la determinación final sobre los cargos formulados contra el empleado gerencial. Ello es así, toda vez que esta decisión requiere la aprobación del Director Ejecutivo, <u>únicamente</u>, cuando impone como sanción la separación definitiva del empleado de su puesto. De otra forma, el dictamen del Oficial Examinador se convierte en la última posición de la autoridad decisoria de la agencia, en lo que respecta a este procedimiento disciplinario.

Como surge claramente del Procedimiento Disciplinario para Empleados Gerenciales, el Oficial Examinador que preside la vista emite la decisión del caso que <u>ha de ser puesta en vigor</u> y no una mera recomendación o un informe que será utilizado para guiar la discreción del Director Ejecutivo. *Cf.* <u>Padilla Falú v. Administración de Viviendas</u>, *supra*. Es decir, el procedimiento aludido no reservó discreción al Director Ejecutivo para alterar la

determinación del Oficial Examinador, salvo en aquellos casos en que la sanción impuesta conlleve la separación definitiva del puesto. Fuera de esta excepción, la intervención del Director Ejecutivo en este procedimiento disciplinario se limita, exclusivamente, a imponer la decisión del Oficial Examinador.

De otra parte, el hecho de que el Director Ejecutivo conserve la facultad de ejercer clemencia administrativa al poner en vigor la decisión del Oficial Examinador no altera nuestra conclusión. La clemencia administrativa —al igual que la clemencia ejecutiva— es un acto de gracia, enteramente discrecional, mediante el cual el facultado con dicho poder puede perdonar las faltas probadas en un proceso y eliminar o reducir la sanción impuesta. Es decir, la clemencia administrativa no forma parte en sí del procedimiento adjudicativo, ni es un derecho que le asiste a ninguna de las partes en el mismo.[10] Además, el ejercicio de esta facultad no incide en los trámites de reconsideración y/o revisión judicial, toda vez que éstos van esencialmente dirigidos a cuestionar los méritos de la decisión, asunto que quedaría inalterado si se ejerciera la clemencia administrativa. En vista de ello, la decisión del Oficial Examinador no estaría sujeta a ser modificada por

---

[10] A modo comparativo y en la esfera de lo penal, en Reynolds v. Jefe de Penitenciaría, 91 D.P.R. 303, 313 (1964), expresamos que el indulto como acto de clemencia ejecutiva, no forma parte en sí del proceso penal que culmina en la convicción de un acusado, ni adviene el convicto a su disfrute como un derecho concedido por el ordenamiento jurídico.

el Director Ejecutivo, sino que este último podría perdonar las faltas cometidas por el empleado en determinadas circunstancias, tomando como base las determinaciones de hecho y conclusiones de derecho del Oficial Examinador.

Dado que el señor Tosado Cortés fue sometido al procedimiento aludido y el Oficial Examinador de la AEE adjudicó la controversia concluyendo que dicho empleado gerencial no incurrió en violaciones a las Reglas de Conducta, se entendió culminado el procedimiento disciplinario, restando únicamente que la parte afectada solicitara reconsideración y/o revisión judicial, de entenderlo necesario.

A la luz de lo anterior, erró el foro apelativo intermedio al interpretar el referido procedimiento disciplinario junto con las disposiciones del Reglamento para los Procedimientos de Adjudicación de Querellas de la AEE, *supra*, y concluir que el Oficial Examinador no podía adjudicar la controversia. El procedimiento disciplinario llevado a cabo contra el señor Tosado Cortés está regulado por las normas contenidas en el Manual sobre Procedimientos Disciplinarios para Empleados Unionados y Gerenciales de la AEE. Estas normas son claras en cuanto a los poderes y facultades delegadas al Oficial Examinador como parte del esquema procesal adoptado por la agencia para atender problemas de conducta entre sus empleados.[11] El carácter

---

[11] Como cuestión de hecho, el procedimiento disciplinario para empleados gerenciales, incluyendo las facultades

especial de dicho procedimiento y la claridad de sus disposiciones no justificaban acudir a otro reglamento de la AEE, aplicable a otros procedimientos adjudicativos de la agencia, para interpretar el alcance de las funciones del Oficial Examinador en el caso ante nos. El utilizar otro reglamento de la AEE para interpretar las facultades del Oficial Examinador dentro del procedimiento disciplinario de autos desvirtúa la esencia del esquema particular adoptado por dicha corporación pública para atender casos de indisciplina laboral, asunto que amerita especial consideración por parte del patrono.

Por otro lado, tampoco nos convence el razonamiento del foro apelativo intermedio a los efectos de que el Oficial Examinador no es un funcionario o empleado de la AEE, por lo que no se le pueden delegar facultades adjudicativas. No cabe duda de la autoridad que posee el Director Ejecutivo para delegar esta función en las personas que entiende poseen la experiencia, conocimiento y destreza para atender correctamente y con agilidad asuntos tan delicados como los relacionados a la conducta del personal gerencial de la agencia. En el ejercicio de dicha facultad, el Director Ejecutivo puede reclutar a un Oficial Examinador para que ejerza las prerrogativas que en el origen le correspondían a dicho jefe de agencia ejecutar.

_____

delegadas al Oficial Examinador, es sustancialmente similar al procedimiento disciplinario para empleados unionados, según éstos han sido estipulados en los convenios colectivos.

En vista de ello, somos del criterio que el Oficial Examinador, al descargar estas funciones propiamente administrativas, funge como un funcionario de la AEE.

En fin, erró el antiguo Tribunal de Circuito de Apelaciones al concluir que la determinación del Oficial Examinador como parte del procedimiento disciplinario aplicable al señor Tosado Cortés no era la decisión final de la AEE, razón por la cual no tenían jurisdicción para entender en el recurso de autos.

IV

Por los fundamentos que anteceden, se revoca la resolución emitida por el entonces Tribunal de Circuito de Apelaciones. Se devuelve el caso al Tribunal de Apelaciones para la continuación de los procedimientos de forma consistente con lo aquí resuelto.

Se dictará Sentencia de conformidad.

FEDERICO HERNÁNDEZ DENTON
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Benny Tosado Cortés

   Recurrido

      v.                           CC-2003-675    Certiorari

Autoridad de Energía Eléctrica

   Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 12 de agosto de 2005.

     Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la resolución emitida por el entonces Tribunal de Circuito de Apelaciones. Se devuelve el caso al Tribunal de Apelaciones para la continuación de los procedimientos de forma consistente con lo aquí resuelto.

     Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Fuster Berlingeri concurre con el resultado sin opinión escrita. El Juez Asociado señor Rebollo López no intervino.

                  Aida Ileana Oquendo Graulau
                Secretaria del Tribunal Supremo