Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| AUTOMATIC EQUIPMENT, INC.  Recurrente  v.  JUNTA DE SUBASTAS DEL MUNICIPIO AUTÓNOMO DE SAN JUAN  Recurrida | KLRA202400328 | Revisión Administrativa procedente de la Junta de Subastas del Municipio de San Juan  Subasta Núm.: 2024-036  Sobre: Impugnación de Subasta |
| --- | --- | --- |

Panel especial integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.

Candelaria Rosa, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de agosto de 2024.

Comparece Automatic Equipment, Inc. (Automatic) mediante revisión judicial y solicita que se revoque la Notificación de Determinación Final de la Junta de Subastas del Municipio Autónomo de San Juan, emitida el 11 de junio de 2024. En dicha determinación, se adjudicó la Subasta Núm. 2024-036 al licitador Antilles Power Depot, Inc. (Antilles Power) para adquirir un generador de emergencia para proveer un resguardo eléctrico al Hospital Municipal de San Juan. Por los fundamentos que expresaremos, confirmamos la determinación recurrida.

En síntesis, el caso de epígrafe trata de una solicitud de propuestas para la Subasta Núm. 2024-036, *Adquisición de Nuevo Generador de Emergencia para el Hospital Municipal de San Juan*

*(HMGP-4473-0031)* (Solicitud de Subasta). Según el expediente, la Federal Emergency Management Agency (FEMA) aprobó fondos para el proyecto Núm. 4473-0031, mediante el Programa 404 de Hazard Mitigation Grant Program (HMGP) para suplir e instalar una subestación eléctrica y generador de emergencia en el Hospital Municipal de San Juan. La Solicitud de Subasta—más otras notificaciones como el *Addendum* Núm. 6 y la Hoja E-I—especificó, entre otras condiciones, (1) que el *Power Rating* del generador deberá ser *Continuous Duty*; (2) que el motor debe tener una clasificación del Environmental Protection Agency (EPA) de Tier 2; y (3) que el generador debe ser tipo *diesel-engine-driven* de la marca Cummins, Caterpillar, MTU, Kohler o Generac. Además, se requirió que los licitadores indiquen el tiempo de entrega del equipo y acompañen un itinerario de entrega junto con su propuesta, considerando la orden de compra, fabricación, envío y entrega en sitio. En tales notificaciones, la Junta de Subastas enfatizó que se evaluaría el costo de la oferta y el tiempo de entrega del equipo.

Cabe señalar que las *Instrucciones a Licitadores*, revisado el 18 de diciembre de 2023, incluía la *Hoja de Cotejo: Documentos Requeridos para Subasta*, en la cual se requirió un itinerario de entrega del equipo licitado y sus componentes, al amparo del *Alcance del Servicio*. Ahora, este último documento exigió que los licitadores indiquen el tiempo de entrega del equipo y acompañen un itinerario de entrega junto con su propuesta, considerando la orden de compra, fabricación, envío y entrega en sitio. No obstante, las *Condiciones Especiales Requeridas para Mejoras Permanentes* (*Condiciones*

*Especiales*), revisada el 24 de agosto de 2023, solo requirió la presentación de la fecha de entrega.

Luego de presentarse las propuestas de los licitadores y la Junta de Subastas evaluarlas, se encontró que (1) el costo total ofrecido por Automatic fue seiscientos noventa y siete mil doscientos cuatro ($697,204.00) dólares, mientras que Antilles Power ofreció ochocientos dieciocho mil cincuenta ($818,050.00) dólares; (2) que la marca del generador de Automatic es HiPower y el de Antilles Power es MTU Rolls-Royce; (3) que el modelo de Automatic es HD12000TT6U y el de Antilles Power es DS 2250; (4) que ambos licitadores ofrecieron una garantía de cinco (5) años o 3,000 horas; y (5) que el tiempo de entrega de Automatic es entre cuarenta y ocho (48) y cincuenta (50) semanas, mientras que Antilles Power propuso un tiempo de entrega de noventa y cuatro (94) semanas. Además, y atinente a nuestros eventuales fundamentos, se desprende del expediente que el generador de Antilles Power tiene un desplazamiento de setenta y seis punto tres (76.3 L) litros y una velocidad máxima de motor de mil ochocientos (1,800 rpm) revoluciones por minuto. Sin embargo, este licitador no presentó un itinerario de entrega del equipo.

Según los fundamentos de la Junta de Subastas, Automatic incumplió con el requisito del *Power Rating*, ya que esta sometió un generador *Standby* de 2,000 kW, en vez de *Continuous Duty*. Mientras tanto, la Junta de Subastas consideró que Antilles Power cumplió con el referido requisito, al este someter un generador *Continuous Duty* de dos mil cuarenta y cinco (2,045 kW) kilovatios. Por tanto, al cumplir con las condiciones dispuestas en los pliegos de la subasta, se adjudicó la *buena pro* a Antilles Power.

Insatisfecho, Automatic recurre ante este Tribunal y alega que la Junta de Subastas erró (1) al adjudicarle la *buena pro* a Antilles, a pesar de este no incluir con su oferta todos los documentos requeridos en el pliego de subasta; (2) al no adjudicarle la *buena pro* a Automatic, a pesar de ser el licitador responsivo que ofertó el mejor precio, bajo el fundamento de que no cumplió con el requisito de *Power Rating*; y (3) al no aceptar la alternativa de cancelar la subasta, ya que los pliegos de la subasta exigen la adquisición y entrega de un generador que no existe en el mercado.

En su oposición, la Junta de Subastas argumenta que (1) aunque este mencionó la necesidad que cada licitador presentara un itinerario de entrega, este no era una condición mandataria, según aparece en el inciso doce (12) de las *Condiciones Especiales* de la subasta; (2) que el itinerario de entrega solo surte importancia luego de contratarse con el licitador agraciado, ya que tal itinerario puede variar como cuestión de realidad; (3) que Antilles Power cumplió con los requisitos de ofrecer un generador Tier 2 con un *Power Rating* de *Continuous Duty*; y (4) que este Tribunal debe deferirse a la decisión de la Junta de Subastas, ya que esta no hizo su determinación de manera arbitraria, caprichosa o irrazonable o que abusara de su discreción.

Ahora bien, antes y después de la Junta de Subastas presentar su alegato, ambas partes estuvieron en una contienda sobre la legalidad de un generador Tier 2 con un *Power Rating* de *Continuous Duty*. En resumidas cuentas, Automatic se comunicó mediante correo electrónico con un funcionario e ingeniero de la EPA, quien escribió que las normas de la referida agencia exigen que, a partir del 2014, todos los generadores de funcionamiento continuo alimentados por motores de

diésel deben cumplir con los criterios de Tier 4 Final. Este añadió que solo se podrían utilizar motores Tier 2 o Tier 3 usados, más que el sería ilegal importar nuevos generadores tipo Tier 2 o Tier 3.

Luego de varios trámites procesales que involucran la admisión de esta información—la cual este Tribunal resolvió ha lugar—la Junta de Subastas respondió a las alegaciones de Automatic mediante otras comunicaciones con el mismo funcionario de la EPA. En estos nuevos correos electrónicos, el funcionario adujo que los generadores de uso solamente de emergencia pueden ser de tipo Tier 2 o Tier 3, mientras que los de uso continuo tienen que cumplir con los criterios del Tier 4 Final. No obstante, aunque el funcionario citó estatutos federales en ambas comunicaciones, en esta última él enfatizó que no se deberá depender en sus consejos, ya que no es abogado.

Vale recordar que la *Ley de la Judicatura de 2003* delimita la facultad revisora de este Tribunal de Apelaciones. En lo pertinente, dicha ley establece que se podrá recurrir ante este Foro "[m]ediante recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas". Art. 4.005 de la Ley Núm. 201-2003 (4 LPRA sec. 24y). Ello resulta igualmente compatible con las disposiciones de la *Ley de Procedimiento Administrativo Uniforme* (LPAU) y el *Reglamento del Tribunal de Apelaciones*. Véase Sec. 4.2 de la Ley Núm. 38-2017 (3 LPRA sec. 9672); Regla 56 del Tribunal de Apelaciones (4 LPRA Ap. XXII-B). De modo equivalente, la jurisprudencia del Tribunal Supremo de Puerto Rico limita la revisión judicial de decisiones administrativas a aquellas instancias en que se trate de órdenes o resoluciones finales, y en las que la parte que

solicita la revisión haya agotado todos los remedios provistos por la agencia administrativa. *Fuentes Bonilla v. ELA et al.*, 200 DPR 364 (2018) (citando a *Tosado v. AEE*, 165 DPR 377 (2005)).

Por otra parte, los procedimientos de las subastas gubernamentales están revestido de un gran interés público y aspiran a promover una sana administración, toda vez que conlleva el desembolso de fondos del erario. *St. James Security Services, LLC v. AEE*, 2023 TSPR 149 (citando a *SLG Ortiz-Mateo v. ELA*, 2023 TSPR 43 (2023); *Super Asphalt v. AFI y otro*, 206 DPR 803 (2021); *ECA Gen. Contrac. v. Mun. de Mayaguez*, 200 DPR 665 (2018); *Trans Ad de PR v. Junta de Subastas*, 174 DPR 56 (2008); *Marina v. Comision*, 170 DPR 847 (2007)). Por ello, estos procedimientos buscan los precios más económicos y evitan el favoritismo, la corrupción, el dispendio, la prevaricación, la extravagancia y el descuido al otorgarse los contratos y minimizar los riesgos de incumplimiento. *Mun. de Aguada v. W. Construction, LLC*, 2024 TSPR 69 (citando a *Caribbean Communications v. Pol. De PR*, 176 DPR 978 (2009)). Véase, también, *Puerto Rico Eco Park v. Mun. de Yauco (Junta de Subastas)*, 202 DPR 525 (2019).

Claro está, el organismo adjudicador concernido goza de amplia discreción al evaluar las propuestas sometidas en subastas gubernamentales. *Transporte Sonnell, LLC v. Junta de Subastas de la ACT*, 2024 TSPR 82 (citando a *Caribbean Communications v. Pol. de PR*, *supra*; *Accumail P.R. v. Junta Sub. AAA*, 170 DPR 821 (2007)). Tal discreción obedece al conocimiento especializado y a la vasta experiencia que los coloca en mejor posición que los foros judiciales para seleccionar al licitador que más beneficie

el interés público. Íd. (citando a *Caribbean Communications v. Pol. de PR*, *supra*; *Perfect Cleaning v. Cardiovascular*, 172 DPR 139 (2007)). En otras palabras, los tribunales no habremos de intervenir con el criterio adjudicado salvo que se demuestre que se actuó de forma arbitraria o caprichosa o mediante fraude o mala fe. Íd. (citando a *Caribbean Communications v. Pol. de PR*, *supra*).

Aunque es cierto que las Juntas de Subastas deben evaluar las ofertas en consideración del precio más bajo, también estos deben adjudicar basándose en otros factores. Bajo el marco de los municipios, sus respectivas Juntas de Subastas deberán tomar en consideración que las propuestas estén conforme a lo que se incluye en el pliego de subasta, tales como (1) las especificaciones; (2) los términos de entrega; (3) la habilidad del postor para realizar y cumplir con el contrato; (4) la responsabilidad económica del licitador; (5) su reputación e integridad comercial; y (6) la calidad del equipo, producto o servicio. Art. 2.040 del Código Municipal de Puerto Rico, 21 LPRA sec. 7216. Véase, también, Reglamento para la Administración Municipal de 2016, Reglamento Núm. 8873 de 19 de diciembre de 2016; *Maranello, Inc. et. al. v. OAT*, 185 DPR 780 (2012) (citando a *C. Const. Corp. v. Mun. de Bayamón*, 115 DPR 559 (1984)).

Pertinente a la controversia ante nos, el *Código Administrativo del Municipio de San Juan*—en el Capítulo XXII Reglamento de Subastas y Solicitud de Propuestas del Municipio autónomo de San Juan (Reglamento de Subastas)—incluye dentro de la definición del pliego de subasta "la invitación, instrucciones, especificaciones, condiciones especiales y generales, planos, *addenda*", entre otros. Art. 22.7.1(55) del Código Administrativo del Municipio de San Juan. Más

adelante, el Reglamento de Subastas dispone que descalificará automáticamente a un licitador si este incumple con las condiciones esenciales o los requisitos mandatarios, estatutarios o reglamentarios de la subasta. Íd., Art. 22.50.6. Además, la Junta de Subastas podrá rechazar todos y cada uno de los pliegos de oferta cuando los licitadores o proponentes añadan, eliminen, modifiquen o varíen las especificaciones o condiciones solicitadas en el pliego de subasta, sin que se haya presentado una enmienda alterna y la misma haya sido aprobada. Íd., Art. 22.55.1(d) y (o).

Por otro lado, la Junta de Subasta podrá cancelar o dejar sin efecto la subasta y rechazar las ofertas, proposiciones o propuestas recibidas antes o después de celebrada la misma, siempre y cuando el Municipio fundamente razonablemente su decisión y lo notifique por escrito a todos los licitadores o proponentes. Íd., Art. 22.57.1. Entre las razones por la cual se puede cancelar una subasta, se incluye cuando no se hayan obtenido los permisos y/o endosos requeridos o necesarios de las agencias, corporaciones públicas y/u otras instrumentalidades del Gobierno Federal. Íd., Art. 22.57.2(g). De cancelar la subasta por alguna de las causas enumeradas en el Reglamento de Subastas, ni el Municipio o la Junta incurrirá en responsabilidad. Íd., Art. 22.57.3.

Concierne la clasificación de los generadores de energía eléctrica, la EPA explica que los generadores de emergencia o *backup*, en modo de *Standby*, funcionan como un recurso de electricidad secundaria, cuando el primario sufre algún fallo. The Role of Distributed Generation and Combined Heat and Power (CHIP) Systems in Data Centers, U.S. Environmental Protection Agency Combined Heat and Power Partnership, 2007, pág. 17. Mientras tanto, el modo

*Continuous Prime Power* se utiliza cuando el generador es el recurso de energía eléctrica primario, usualmente para ocasiones como un apagón calendarizado o un fallo del generador del edificio o complejo; en otras palabras, funciona durante situaciones que carecen de urgencia o emergencia. Íd.; RICE NESHAP Requirements for Stationary Engines at Area Sources of Hazardous Air Pollutants, U.S. Environmental Protection Agency, 2013, pág. 6.

A raíz de ello, la *Code of Federal Regulations* (CFR) dispone que todo motor de combustión interna (*ICE*, en sus siglas en inglés), ignición de compresión (*CI*, en sus siglas en inglés), no urgente e inmóvil (*stationary non-emergency CI ICE*) manufacturado después del 2007 y que tiene una potencia máxima menos o igual a dos mil doscientos treinta y siete (2,237 kW) kilovatios y un desplazamiento de menos de diez (10) litros por cilindro, deberá ser certificado a los estándares de emisiones para nuevos motores *CI* para uso fuera de carreteras (*nonroad CI engines*); particularmente, los estándares de emisiones de aquellos motores manufacturados después del 2014 deben cumplir con los criterios de Tier 4. 40 CFR secs. 60.4201; 1039.101. Mientras tanto, para aquellos motores de emergencia—con las mismas otras características de los de *non-emergency*—se le aplicarán los estándares de emisiones de Tier 2 o Tier 3 para su certificación. Íd., sec. 60.4202.

Asimismo, la CFR regula los estándares de emisiones de motores cuando estos ya están en manos de sus dueños u operadores. Cuando los generadores (1) son *stationary non-emergency CI ICE* o *stationary emergency CI ICE*; (2) tienen un desplazamiento mayor o igual a treinta (30) litros por cilindro; y (3) tienen un motor con una velocidad máxima

mayor o igual a ciento treinta (130 rpm) revoluciones por minuto, pero menos de dos mil (2,000 rpm) revoluciones por minuto, sus respectivos dueños u operadores deben asegurarse que las emisiones de óxido de nitrógeno (NOx) estén limitados a la fórmula $9.0 \cdot n^{-0.20}$ g/kW-hr (gramos por kilovatios-hora) para motores *non-emergency*, o a $44 \cdot n^{-0.23}$ g/kW-hr para motores de emergencia. Íd., secs. 60.4204; 60.4205. Como nota aclaratoria, la *n* en la fórmula es la velocidad máxima del motor que se está evaluando. Íd.

Aplicando todo lo referido al motor en controversia, encontramos que, según la Rolls-Royce Group, *Data Center Continuous Power* es un generador que está específicamente diseñado "for the use in data centers as **emergency stanby units**". (Énfasis suplido). Power Generation: Solutions Guide, Rolls-Royce Group, 2024, pág. 4. Además, el generador de Antilles Power tiene un *Power Rating* de *Continuous Duty* y un desplazamiento de setenta y seis punto tres (76.3 L) litros. Más aun, utilizando la fórmula de $44 \cdot n^{-0.23}$ g/kW-hr—y sustituyendo la *n* por mil ochocientos (1,800 rpm) revoluciones por minuto del motor en controversia—encontramos que los niveles de NOx del motor al estándar de emergencia están limitados a 8 g/kW-hr; al estándar *non-emergency*, los niveles de NOx están restringidos a 2.01 g/kW-hr. Por último, según la EPA, esta clasificó la familia del modelo del generador en controversia con un nivel de NOx de 5.16 g/kW-hr. Nonroad Compression Ignition Certification Data (Model Years: 2011 – Present), U.S. Environmental Protection Agency, 2024.

En este caso, encontramos que la Junta de Subastas erró parcialmente en su fundamento al adjudicar la *buena pro* a Antilles Power. Aunque es cierto que las *Condiciones Especiales* solo requirió

la presentación de la fecha de entrega, este documento fue revisado el 24 de agosto de 2023, meses antes de publicarse las *Instrucciones a Licitadores*, cual fue revisada el 18 de diciembre de 2023 y obliga a los licitadores ofrecer un itinerario de entrega del equipo. Por tanto, al Antilles Power no presentar un itinerario de entrega de equipo, este licitador incumplió con los criterios establecidos por la Junta de Subastas.

No obstante lo anterior, sabemos que la evaluación de una oferta o propuesta conlleva cumplir con varios factores. Atinente a lo analizado, el Municipio de San Juan, como dueño u operador del generador con certificación Tier 2 y un *Power Rating* de *Continuous Duty*, podrá utilizarlo siempre y cuando las emisiones de NOx estén por debajo o igual a 8 g/kW-hr. Además, Antilles Power cumplió con el resto de los criterios, incluyendo que la marca de modelo del generador esté entre los enumerados por la Junta de Subastas, con la cual Automatic no cumplió. De tal forma, y evaluada la subasta en su totalidad, no encontramos que la Junta de Subastas haya adjudicado arbitraria o caprichosamente o mediante fraude o mala fe, por lo cual no intervendremos en la adjudicación en controversia.

Por los fundamentos expresados, confirmamos la determinación recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones