Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL III[1]

| JONATHAN ROMÁN BAQUÉ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECCIÓN Y REHABILITACIÓN<br><br>Recurrida | KLRA202500243 | Revisión Administrativa procedente del Departamento de Corrección y Rehabilitación<br><br>Núm. Confinado: 15236<br><br>Sobre: Reconsideración |
|---|---|---|

Panel integrado por su presidente, el Juez Candelaria Rosa, el Juez Salgado Schwarz y el Juez Monge Gómez.

Candelaria Rosa, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de junio de 2025.

Comparece por derecho propio el señor Jonathan Román Baqué (señor Román Baqué o Recurrente) vía *revisión judicial* y solicita que revoquemos una determinación emitida por el Centro de Tratamiento Residencial de Arecibo (Centro) el 12 de febrero de 2025 y notificada el 18 de febrero de 2025. Esta determinación denegó la participación del señor Román Baqué en el mencionado Centro. Asimismo, acompañó su recurso con una solicitud para litigar como indigente, la cual declaramos ha lugar. Por los fundamentos que expondremos, se desestima el recurso incoado por falta de jurisdicción y se devuelve el caso al Departamento de Corrección y Rehabilitación (DCR o parte Recurrida) para la continuación de los procedimientos ante la agencia.

---

[1] Mediante la Orden Administrativa DJ-2024-062C emitida el 6 de mayo de 2025 se designó al Hon. Carlos I. Candelaria Rosa, Presidente del Panel III, en sustitución del Hon. Félix R. Figueroa Cabán, quien se acogió al retiro el 5 de mayo de 2025.

En síntesis, el Recurrente alegó en su recurso de revisión judicial que, para el 20 de diciembre de 2024, el Comité de Clasificación y Tratamiento del DCR lo refirió a participar del Programa Centro de Tratamiento Residencial de Arecibo. Así las cosas, el 12 de febrero de 2025, el Centro emitió una determinación a través de la cual denegó el referido del Recurrente. Entendió que, de la evaluación del caso debía desprenderse información de la que se pudiese determinar que el confinado no constituye un riesgo para su seguridad, la comunidad, familiares de las partes perjudicadas o víctimas del delito. Esta determinación fue notificada al señor Román Baqué el 18 de febrero de 2025. El 4 de marzo de 2025, el Recurrente presentó una *Solicitud de Reconsideración*.

En ausencia de respuesta por parte del DCR, el 28 de abril de 2025, el Recurrente presentó el recurso que nos ocupa. Señaló que erró la agencia: 1) por no haber basado su determinación en evidencia sustancial que obra del expediente; 2) porque la determinación interrumpió su proceso de rehabilitación; 3) porque la notificación carecía de determinaciones de hecho y conclusiones de derecho; 4) porque su actuación coartó el interés de libertad del Recurrente y fue contraria a la política pública de la agencia, en virtud del Artículo VI, Sección 19 de la Constitución del Estado Libre Asociado de Puerto Rico; 5) porque su determinación produciría resultados incompatibles con la política pública de la agencia; y 6) porque abusó de su discreción al abstenerse de realizar "el correspondiente análisis hermenéutico de forma conclusiva" para determinar si el Recurrente cualifica para la participación del programa.[2]

---

[2] *Véase*, Recurso de revisión judicial, pág. 6.

El 30 de junio de 2025, el DCR presentó su *Escrito en Cumplimiento de Resolución*. En síntesis, alegó que la determinación recurrida no es final, por lo que procede devolver el caso al DCR para que la agencia emita una nueva decisión que pase juicio sobre si el Recurrente cumple con los criterios de elegibilidad para participar del Centro.

Vale recordar que la *Ley de la Judicatura de 2003* delimita la facultad revisora de este Tribunal de Apelaciones. En lo pertinente, dicha ley establece que se podrá recurrir ante este Foro "[m]ediante recurso de revisión judicial, que se acogerá como cuestión de derecho, de las decisiones, órdenes y resoluciones finales de organismos o agencias administrativas". Art. 4.005 de la Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003, Ley Núm. 201-2003 (4 LPRA sec. 24y). Ello resulta igualmente compatible con las disposiciones de la *Ley de Procedimiento Administrativo Uniforme* (LPAU) y el *Reglamento del Tribunal de Apelaciones*. Véase Sec. 4.2 de la Ley Núm. 38-2017 (3 LPRA sec. 9672); Regla 56 del Tribunal de Apelaciones (4 LPRA Ap. XXII-B). De modo equivalente, la jurisprudencia del Tribunal Supremo de Puerto Rico ha limitado la revisión judicial de decisiones administrativas, ordinariamente a aquellas instancias en que se trate de órdenes o resoluciones finales, y en las que la parte que solicita la revisión haya agotado todos los remedios provistos por la agencia administrativa. *Fuentes Bonilla v. ELA et al*, 200 DPR 364 (2018) (citando a *Tosado v. A.E.E.*, 165 DPR 377 (2005)).

Ahora bien, los procedimientos y decisiones de las agencias administrativas están cobijados por una presunción de regularidad y

corrección. Por ello, la revisión judicial de las determinaciones administrativas se limita a examinar si la actuación de la agencia fue razonable, y solo cede cuando la decisión no está basada en evidencia sustancial, cuando la agencia ha errado en la aplicación de la ley, o cuando su actuación es irrazonable o ilegal. *Caribbean Communications v. Pol. de P.R.*, 176 DPR 978 (2009).

De otro lado, la Sección 19 del Artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico expresa que "[s]erá política pública del Estado Libre Asociado reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social". Dicha aspiración se convirtió en mandato legislativo mediante la Ley 377-2004, que estuvo vigente hasta el 21 de noviembre de 2011, fecha en que fue derogada por el Plan de Reorganización del Departamento de Corrección y Rehabilitación de 2011. Sin embargo, el mandato que emana de la Constitución de Puerto Rico subsistió y la rehabilitación de la persona confinada persiste como elemento esencial del sistema correccional del país.

En virtud de la norma antes esbozada, el DCR aprobó el *Manual de Normas y Procedimientos para los Centros de Tratamiento Residencial*, Reglamento Núm. 9245 de 20 de diciembre de 2020. Este reglamento tiene como meta, en lo pertinente, lograr establecer Centros de Tratamientos Residenciales para ofrecer servicios biopsicosociales a los confinados con problemas de uso y abuso de sustancias controladas y alcohol, que no representen un riesgo para la comunidad, enfocado en el cambio de los estilos de vida de los confinados, de forma

que permita reducir la dependencia a las sustancias controladas, el crimen o problemáticas relacionadas. Manual de Normas y Procedimientos para los Centros de Tratamiento Residencial, Reglamento Núm. 9245 de 20 de diciembre de 2020, Art. IV, pág. 3.

El Artículo VI del precitado reglamento, establece los criterios de elegibilidad para participar de los Centros de Tratamiento Residencial. Entre ellos se encuentra que el historial delictivo del confinado no represente un riesgo para la comunidad y que en la institución correccional se notifique a las víctimas del delito, tomando en consideración su opinión con respecto a pases a la comunidad. Íd., págs. 5-6.

Asimismo, el DCR aprobó el *Reglamento del Programa Integral de Reinserción Comunitaria*, Reglamento Núm. 9488 de 9 de agosto de 2023, cuyo objetivo es trabajar en la rehabilitación de las personas que han delinquido mediante su adecuada reinserción a la comunidad, sin menoscabar la seguridad pública. Reglamento del Programa Integral de Reinserción Comunitaria, Reglamento Núm. 9488 de 9 de agosto de 2023, Art. II, pág. 2. Entre los criterios de elegibilidad requeridos por este cuerpo reglamentario, se encuentra que, de la evaluación del caso, deberá desprenderse información de la que se pueda determinar que el confinado no constituye un riesgo para su seguridad, la de la comunidad, sus familiares, ni las víctimas del delito. Íd., pág. 11.

Tras una evaluación del expediente ante nuestra consideración, y luego de atendida la postura del DCR, concluimos que la determinación recurrida no evaluó o analizó en los méritos si el señor Román Baqué cumple o no con los requisitos de elegibilidad para participar del Centro

de Tratamiento Residencial de Arecibo. Inclusive, así lo manifestó el DCR en su *Escrito en Cumplimiento de Resolución*.

Por tanto, se desestima el recurso de revisión judicial presentado por no existir, al momento, una determinación adminnistrativa final de la agencia susceptible de ser considerada en revisión, por lo cual devolvemos el caso de epígrafe al DCR para la continuación de los procedimientos, a fin de que se determine finalmente si el Recurrente cumple o no con los criterios de elegibilidad establecidos en la reglamentación antes discutida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones