El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
En esta ocasión nos corresponde determinar si un ciu-dadano tiene derecho a que se le notifique una sentencia dictada contra la Junta de Planificación como resultado de un recurso de revisión administrativa en el que se im-pugnó con éxito una rezonificación que fue promovida ori-ginalmente por ese ciudadano. Resolvemos en la afirma- *751 tiva. Los hechos que dieron base a esta controversia son los siguientes.
l — i
En el 2001, el Sr. Reynaldo Domínguez Fragoso solicitó a la Junta de Planificación (Junta) un cambio de zonifica-ción para un terreno de su propiedad que ubica en el Bo. Sabana Llana del municipio de San Juan. La solicitud pro-curaba cambiar la zonificación de Distrito Residencial de Densidad Intermedia (R-3) a Distrito Industrial Liviano (1-1) o Comercial Central Intermedio (C-2). Ello, con el pro-pósito de utilizar la propiedad para operar un taller de hojalatería y pintura, mecánica liviana y estacionamiento. La Junta aprobó esa recalificación mediante una resolu-ción emitida en el 2003. Luego, el 1 de junio de 2007 la Junta aprobó la Resolución C-18-1 en la que autorizó los cambios de zonificación de 78 solicitudes, entre ellas la del señor Domínguez Fragoso. Esta resolución fue publicada en el periódico El Vocero el 1 de junio de 2007 y contenía 78 casos de rezonificación o recalificación aprobados desde el 1986 hasta el 2006. Asimismo, esta resolución de la Junta enmendó los Mapas de Calificación del Municipio de San Juan, el Plano de Ordenamiento del Area Especial de San-turce y el Mapa de Zonificación Especial de Condado.
Inconforme con la resolución de la Junta, el municipio de San Juan (Municipio) acudió oportunamente ante el Tribunal de Apelaciones mediante un recurso de revisión administrativa en el que impugnó las rezonificaciones mencionadas. Específicamente, el Municipio cuestionó la validez de la resolución por entender que el aviso en el periódico había sido defectuoso al no advertir o notificar adecuadamente a las partes afectadas el derecho de revi-sión judicial, al igual que el término legal para ello. Sin embargo, según el peticionario, el Municipio no le notificó a él ni a ninguna de las demás 77 personas que se verían *752 afectadas por el resultado de la presentación de su causa de acción. ([1])
Así las cosas, el 31 de octubre de 2008 el Tribunal de Apelaciones dictó una sentencia en la que le concedió la razón al Municipio, revocando la resolución emitida por la Junta y devolviendo el asunto a esa agencia para que emi-tiera nuevamente las recalificaciones. De esa forma, y en-tre otros asuntos, la Junta debía explicar los fundamentos que utilizó para aprobar las enmiendas solicitadas. Esta sentencia no fue notificada ni al peticionario ni a ninguna de las 77 personas afectadas con la misma.
Mientras tanto, y como era de esperarse, el señor Domínguez Fragoso ya había realizado varias gestiones en las agencias correspondientes para obtener los permisos requeridos para utilizar su propiedad conforme a la autorización que la Junta le había concedido.([2])
Ahora bien, como consecuencia de la sentencia dictada por el Tribunal de Apelaciones, la Junta revirtió la aproba-ción de la recalificación obtenida por el señor Domínguez Fragoso y devolvió el terreno a su clasificación original R-3. Asimismo, la Junta Revisora de Permisos y Usos de Terrenos emitió una resolución en la que revocó el permiso de uso que se le había otorgado al señor Domínguez Fragoso para operar su taller. ([3])
Inconforme, el 20 de mayo de 2011 el señor Domínguez Fragoso presentó en este Tribunal una petición de mandamus en la que, en síntesis, argumentó que: (1) el Tribunal *753 de Apelaciones tenía la obligación de notificarle la senten-cia de octubre de 2008, y (2) que el recurso presentado por el Municipio ante el foro apelativo intermedio no se perfec-cionó adecuadamente pues no se le notificó a partes con interés, por lo que la sentencia del foro apelativo interme-dio fue dictada sin jurisdicción para hacerlo y era nula.
En cuanto a la petición de mandamus presentada por el peticionario, el 27 de junio de 2011 emitimos una resolu-ción en la que la declaramos “no ha lugar” por entender que el señor Domínguez Fragoso aún contaba con otros re-medios en ley para adelantar su causa. Sin embargo, y con el propósito de ilustrar la razón por la cual no procedía el recurso de mandamus, en nuestra Resolución —la que aquí citamos in extenso— señalamos lo siguiente:
El señor Domínguez Fragoso, al igual que los restantes 77 dueños de los predios afectados por la Resolución, eran partes con interés en la sentencia emitida por el Tribunal de Apela-ciones el 31 de octubre de 2008. Ello, pues, la acción adminis-trativa impugnada estaba específicamente dirigida a ellos .... Al Tribunal de Apelaciones omitir notificarles la sentencia, los términos establecidos por nuestro ordenamiento para reconsi-derar o acudir en alzada aún no han comenzado a cursar.
A la luz de lo anterior, el peticionario aún puede presentar ante el foro apelativo intermedio una moción solicitando la re-notificación del dictamen impugnado. El Tribunal de Apela-ciones, de constatar que no notificó su sentencia a los 78 due-ños de los predios afectados por la Resolución, deberá re-notificar la misma. Una vez el Tribunal cumpla con lo indicado, comenzarán a cursar los términos de reconsidera-ción o apelación provistos por Ley.
En dicho término, el señor Domínguez Fragoso podrá im-pugnar la sentencia por falta de jurisdicción si es que, en efecto, el Municipio omitió notificar su alegato a todas las par-tes con interés, según lo exige la Regla 58 del Reglamento del Tribunal de Apelaciones ... al igual que nuestros pronuncia-mientos jurisprudenciales .... De tomar el curso indicado, será el Tribunal de Apelaciones —al resolver el posible recurso de reconsideración— o esta Curia —al disponer de un potencial escrito de certiorari— quien ausculte en su día si el Tribunal de Apelaciones actuó sin jurisdicción al atender un recurso en sus méritos que nunca fue notificado por el Municipio a todas las partes con interés.
*754 Por todo lo anterior, declaramos No Ha Lugar el auto de mandamus reseñado ya que el peticionario aún cuenta con otros remedios en Ley que aconsejan evitar ejercer nuestra jurisdicción original para atender tan privilegiado recurso extraordinario. (Citas omitidas).([4])
A base de lo expresado en nuestra Resolución, el 11 de julio de 2011 el señor Domínguez Fragoso presentó ante el Tribunal de Apelaciones un escrito titulado Comparecencia de Parte Indispensable en Solicitud para que se Notifique Copia de la Sentencia Emitida por este Foro el 31 de octu-bre de 2008 en los Casos de Epígrafe, de Conformidad con lo Resuelto por el Honorable Tribunal Supremo en el Caso de Mandamus MD-2011-0004.
Sin embargo, el Tribunal de Apelaciones denegó la soli-citud del señor Domínguez Fragoso. El foro apelativo inter-medio razonó que la notificación de la Junta sobre las en-miendas a los Mapas de Calificación de Suelos fue defectuosa y era una acción reglamentaria, por lo que solo podía ser revisada en un contexto más limitado. Concluyó que su decisión servía precisamente para garantizar ade-cuadamente los derechos de las posibles partes afectadas por la rezonificación y que el señor Domínguez Fragoso no estaba sufriendo ningún menoscabo particular de sus dere-chos porque la decisión administrativa era reglamentaria, y que por los errores que cometió la Junta en la notifica-ción, fue ineficaz.
Inconforme con la decisión del Tribunal de Apelaciones, el señor Domínguez Fragoso presentó una oportuna Peti- *755 ción de certiorari ante este Tribunal. En su escrito el peti-cionario planteó la comisión de varios errores, de los cuales basta solo uno para convencernos de que debemos revocar la resolución del Tribunal de Apelaciones. Es el siguiente:
... Erró el Tribunal de Apelaciones al negarse a notificarle al Sr. Domínguez Fragoso la Sentencia del 31 de octubre de [2008] a pesar que éste es una parte con interés que se en-cuentra directa y adversamente afectada por la determinación tomada en dicha Sentencia, cosa que el Tribunal, también se niega a reconocer. Certiorari, pág. 8.
Por su parte, el 12 de diciembre de 2011 el Municipio presentó un Memorando en Oposición a la expedición del recurso en el que alegó, en síntesis, que el Tribunal de Apelaciones no estaba obligado a notificar su sentencia al señor Domínguez Fragoso porque este Tribunal no entró en los méritos del caso. El Municipio sostuvo que nuestros pronunciamientos en la Resolución de 27 de junio de 2011 no sentaron un precedente jurídico y por eso debían te-nerse por no puestos.
Así las cosas, el 13 de enero de 2012 emitimos una Re-solución, notificada el 19 de enero de 2012, en la que le concedimos al Municipio un término de 20 días para que mostrara causa por la cual no debíamos revocar la Resolu-ción dictada por el Tribunal de Apelaciones. El 8 de febrero de 2012 el Municipio presentó su escrito en cumplimiento de orden en la que nos solicitó que acogiéramos su Memo-rando en Oposición como su escrito para mostrar causa. Así pues, con el beneficio de ambas comparecencias, expe-dimos y procedemos a resolver.
HH HH
A. Proceso de zonificación
El proceso de zonificación es el mecanismo mediante el cual se establecen o fijan los usos adecuados para todos los terrenos de Puerto Rico y de las islas adyacentes *756 que le pertenecen. ([5]) Mediante la zonificación los terrenos se clasifican en zonas o distritos en los que se establecen disposiciones específicas sobre el uso de estos y las obras y estructuras que han de permitirse en ellos.([6]) Para ello también se crean los mapas de zonificación que son los que demarcan y definen los diferentes distritos.([7])
Por su parte, la Junta de Planificación es la agencia que está facultada para preparar y adoptar los mapas de zonificación, así como para considerar y atender las solicitudes de enmiendas a estos.([8]) Es decir, la Junta es la encargada de considerar cambios a la zonificación de determinado sector o solar. Al ejercer esa facultad, ciertamente hemos establecido que la Junta ejercita una función cuasi legislativa, ya que no adjudica una controversia sino que establece una reglamentación.([9]) Ello, porque en dicho proceso la Junta actúa en el ejercicio del poder legislativo delegado.([10])
Precisamente en Lun Investment Corp. v. Román, 125 D.P.R. 533, 546 (1990), reconocimos que el proceso de zonificación es de naturaleza cuasi legislativa en cuanto a que la Junta no tiene que expresar las determinaciones de hecho y de derecho en las que fundamentó su decisión, como si se tratara de un proceso de naturaleza adjudicativa. En esa ocasión señalamos que
*757 [l]os mapas de zonificación y sus enmiendas representan la forma visual y práctica de instrumentar los reglamentos de zonificación y sus enmiendas. Su aprobación y enmiendas no son actos de naturaleza adjudicativa, dirigidos a resolver una controversia en particular entre una o más personas, sino que son actos producto de los instrumentos con los cuales el Es-tado ha provisto a la Junta para reglamentar el uso de la tierra en Puerto Rico, de manera que se logre un desarrollo integral y balanceado de nuestra sociedad. Luán Investment Corp. v. Román, supra, pág. 547.
B. La notificación en el proceso de zonificación
En su Resolución, el Tribunal de Apelaciones se negó a notificar la Sentencia al señor Domínguez Fragoso porque “no está sufriendo ningún menoscabo particular de sus de-rechos pues la decisión administrativa, además de ser re-glamentaria, fue ineficaz ...”.([11]) Implica esto que al pro-ceso particular de zonificación, por ser reglamentario ¿le aplican automáticamente las formalidades que establece la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.X[12]) para la formulación de reglamentos? La con-testación es en la negativa. Nos explicamos.
1. Clasificaciones generales en los procesos de adopción de reglas y reglamentos según la L.P.A. U.
Para fines del proceso de adopción de reglas y reglamentos, la L.P.A.U. reconoce dos clasificaciones generales, a saber, las reglas legislativas y las reglas no legislativas.([13]) En el caso de la “regla legislativa” la hemos definido como “aquella que crea derechos, impone obligaciones y establece un patrón de conducta que tiene fuerza de ley”.([14]) Este tipo de regla “impacta directamente a los ciudadanos en general y obliga con fuerza de ley a la *758 agencia”. (Énfasis suplido).([15]) En consecuencia, las agen-cias deben adoptarlas en estricta observación de los requi-sitos de la L.P.A.U., brindando la oportunidad a los ciuda-danos para conocerlas y expresar cualquier reparo antes de su aprobación final/[16])
Por su parte, las “reglas no legislativas” son aquellas —interpretativas, procesales o declaraciones de política general— que por sus propósitos no requieren el cumplimiento de las formalidades reguladas por la L.P.A.U.([17]) Ello, porque esta modalidad no vincula a la agencia ni crea derechos sustantivos o procesales en los cuales el ciudadano puede confiar/[18]) Así, pues, contrario a las reglas legislativas —que generan derechos entre las partes— las reglas no legislativas “no tienen ningún efecto legal vinculante”/[19])
Como hemos expuesto, la promulgación de “reglas legis-lativas” requiere una serie de formalidades legales. Entre los requisitos que la L.P.A.U. establece se encuentra la no-tificación al público de la determinación de la agencia de adoptar la reglamentación. Esa notificación debe reali-zarse mediante la publicación de un aviso en español e inglés en un periódico de circulación general y en el internet/[20]) Cuando la reglamentación de la agencia incide en alguna comunidad en específico, hay que publicar el aviso en español e inglés en un periódico regional de esa comunidad/[21]) Es decir, lo anterior evidentemente no im-plica ni requiere una notificación personal a cada una de *759 las personas que se verían afectadas por la regla-mentación. Basta con la notificación general.
2. Caso particular del proceso cuasi-legislativo de zoni-ficación
En el caso específico de la zonificación no hay duda de que es un proceso cuasi legislativo. No obstante, ello no acarrea la aplicación automática de la doctrina general so-bre la aprobación de reglamentos y mucho menos en lo concerniente al aspecto de la notificación. Es evidente que el proceso de zonificación es distinguible y particular.
Los cambios de zonificación tienen su génesis por peti-ción de alguna persona, organismo o a iniciativa propia de la Junta.![22]) El Reglamento de zonificación([23]) dispone pre-cisamente los requisitos esenciales que deben cumplirse en el proceso de cambios de zonificación. La Sec. 4.06 del Re-glamento establece requisitos diferentes, ya sea si la peti-ción fue por iniciativa propia de la Junta o si fue por una persona, agencia o entidad.![24]) Lo anterior implica que los peticionarios en el proceso tendrán que cumplir con las obligaciones y los requisitos que el Reglamento de zonifica-ción establece al respecto.![25]) Sin embargo, independiente-mente de quién sea el peticionario en el proceso de cambio de zonificación, surge diáfanamente del Reglamento la im-portancia de notificar a los dueños de las propiedades de la zona sujeta al cambio.![26])
Por ejemplo, la Sec. 4.06 señala que “[c]uando sea [por] iniciativa propia y se trate de solares de pertenencia privada o pública, la Junta notificará al dueño de la *760 propiedad”([27]) Evidentemente la notificación es esencial en todos los aspectos que cubren el proceso de zonificación. Esto se fundamenta en que un cambio de zonificación tiene la consecuencia de limitar la propiedad de los ciudadanos. No estamos ante un reglamento de aplicación general. Por el contrario, el cambio de zonificación es una reglamenta-ción de aplicación particular. Por esa razón, la oportuna notificación de un cambio de zonificación es parte integral del debido proceso de ley de los ciudadanos.([28]) Cónsono con lo anterior, en Montoto v. Lorie, 145 D.P.R. 30, 44 (1998), reconocimos que cuando la Junta altera la zonificación existente de un área, ello “hace indispensable la adecuada notificación a todas las partes cuyos intereses puedan que-dar afectados”. (Enfasis suplido).([29])
Por consiguiente, si la notificación a los dueños de las propiedades sujetas al proceso de zonificación es tan esen-cial en el ámbito administrativo, no vemos cómo a nivel apelativo la notificación pueda ser más laxa. En otras pa-labras, la importancia de la notificación a los propietarios cubre todo el proceso de zonificación, incluyendo las etapas apelativas. Lo anterior, claro está, es solo un elemento de las demás formalidades que la ley y los reglamentos impo-nen al proceso.
1 — I HH
A. La sentencia que dictó el Tribunal de Apelaciones el 31 de octubre de 2008 dejó sin efecto las rezonificaciones previas de los predios pertenecientes tanto al señor Domín-guez Fragoso como a otras 77 personas. Como ya hemos establecido, dicha sentencia no fue notificada a ninguna de estas personas. Ahora bien, nótese que tales rezonificacio- *761 nes no fueron el producto de una acción motu proprio de la Junta, para las cuales el Reglamento vigente al momento claramente exigía el que se notificara a todas las personas que pudieran verse afectadas. Sino que, más importante aún, tales rezonificaciones surgieron como el fruto de la acción del peticionario y los demás ciudadanos que tenían un interés en que se rezonificaran sus correspondientes predios, y así lo consiguieron. Por lo tanto, es evidente que el Tribunal de Apelaciones estaba obligado a notificar la sentencia a los 78 propietarios. En lo pertinente al caso de autos, determinamos que el foro apelativo intermedio tenía que notificar su sentencia de 31 de octubre de 2008 al se-ñor Domínguez Fragoso, porque este es parte con interés en el proceso. Nos explicamos.
En primer lugar, es axiomático que cuando una actua-ción judicial afecta directamente la zonificación de un pre-dio, esta debe ser notificada como mínimo al dueño del predio. Como ya hemos expuesto, es indispensable enton-ces que los cambios de zonificación sean notificados ade-cuadamente a todas las partes cuyos intereses puedan que-dar afectados. ¿Quién puede tener mayor interés sobre la calificación de un predio que no sea su propio dueño? Así pues, salta a la vista que el señor Domínguez Fragoso, como dueño de un predio rezonificado y que el Tribunal de Apelaciones revocó, es parte con interés en el proceso. Por consiguiente, el foro apelativo intermedio estaba obligado a notificar su sentencia al señor Domínguez Fragoso.
En segundo lugar, en el caso de autos el señor Domín-guez Fragoso es “parte” porque es el promovente en un proceso de cambio de zonificación y su propiedad era el objeto de la acción administrativa. Lo anterior es cónsono con lo que establece la Sec. 1.3(j) de la L.P.A.U.([30]) Y es que es patente que el aquí peticionario era una parte con interés ante la conspicua realidad de que la rezonificación de su predio se había dado a instancias y expensas suyas.
*762 Por lo anterior, es forzoso concluir que la falta de notifi-cación de la sentencia del 31 de octubre de 2008 tuvo el efecto de dejar al peticionario, así como a las otras 77 per-sonas que iniciaron el proceso administrativo ante la Junta, desprovistas de una oportunidad de solicitar recon-sideración o revisión de ese dictamen, impidiendo el que fueran oídos en la causa de acción entablada por el Municipio. Como consecuencia, los intereses del señor Do-mínguez Fragoso se vieron huérfanos de protección y cier-tamente afectados por la decisión del Tribunal de Apelaciones. Prueba de ello es que debido a esa determina-ción del foro apelativo intermedio la Junta devolvió el pre-dio del señor Domínguez Fragoso a su calificación original (R-3), y posteriormente la Junta Revisora le revocó el per-miso de uso que había obtenido.
Es por eso que resulta totalmente errada, no solo la de-terminación, sino el fundamento del Tribunal de Apelacio-nes en su sentencia de 17 de agosto de 2011, al señalar que su decisión servía precisamente para garantizar adecuada-mente los derechos de las posibles partes afectadas por la rezonificación y que el señor Domínguez Fragoso no estaba sufriendo ningún menoscabo particular de sus derechos porque la decisión administrativa tomada por la Junta. Todo lo contrario.
Al insistir en no notificar al peticionario su sentencia de 31 de octubre de 2008, el foro apelativo intermedio dejó indefectiblemente fuera del proceso a una parte con interés que tiene el perfecto derecho de cuestionar una sentencia dictada como producto de un proceso que claramente lo ha afectado negativamente.
B. En su escrito el Municipio se sirve de las expresio-nes del Tribunal de Apelaciones con relación al carácter reglamentario y no adjudicativo de la actuación de la Junta para justificar la falta de notificación. Nuevamente, lo que el Municipio y el Tribunal de Apelaciones pierden de perspectiva es que más allá de clasificar la actuación de la *763 Junta como reglamentaria o adjudicativa, el señor Domín-guez Fragoso es una parte con interés. Por lo tanto, cual-quier sentencia relacionada con esta tenía que ser notifi-cada a esas 78 personas.
IV
Así, pues, por los fundamentos antes expuestos, expedi-mos el recurso y revocamos la Resolución del Tribunal de Apelaciones. El foro apelativo intermedio tendrá que noti-ficar al señor Domínguez Fragoso y a las demás partes que no haya notificado. Una vez el tribunal cumpla sin dilación con lo indicado, comenzarán a contar los términos de recon-sideración([31]) o apelación provistos por ley.

Se dictará sentencia de conformidad.

El Juez Presidente Señor Hernández Denton disintió e hizo constar la expresión siguiente: “Disiento por entender que el recurso de revisión presentado por el Municipio de San Juan no se perfeccionó. Del expediente surge clara-mente que el Municipio no notificó la presentación de su recurso a los 78 propietarios que promovieron las rezonifi-caciones impugnadas. Como consecuencia, el Tribunal de Apelaciones dictó sentencia sin tener jurisdicción para ello, por lo que su dictamen es nulo. Como resultado de lo anterior, revocaríamos la sentencia del Tribunal de Apelacio-nes, desestimaríamos el recurso de revisión administrativa y ordenaríamos la reinstalación de las rezonificaciones aprobadas originalmente por la Junta de Planificación”. La Juez Asociada Señora Rodríguez Rodríguez no intervino. El Juez Asociado Señor Martínez Torres no interviene.

(1) En el recurso de revisión el Municipio también adujo que el aviso por parte de la Junta inducía a error al indicar que las enmiendas efectuadas regirían a los 30 días de su publicación. Además, argumentó que la cantidad de recalificaciones (78) hacía casi imposible la presentación de recursos de revisión administrativa para todos los casos. Igualmente, el Municipio alegó que la actuación de la Junta violó la Ley de Municipios Autónomos al impedir la participación del Municipio durante el proceso de cambios de zonificación.

(2) Algunos de los permisos fueron obtenidos antes de que el Tribunal de Apela-ciones dictara la sentencia notificada el 31 de octubre de 2008 y otros después.

(3) Esa decisión fue impugnada por el señor Domínguez Fragoso y aún se en-cuentra en el Tribunal de Apelaciones pendiente de adjudicación. Véase Caso Núm. KLRA-2011-0224.

(4) Véase Resolución de este Tribunal de 27 de junio de 2011. Apéndice 2 del Certiorari, págs. 23-24. Con relación a esa Resolución, 7 de los 9 jueces coincidieron en que al peticionario parecía asistirle la razón en cuanto a su derecho a que se le notificara la sentencia en controversia. La Juez Asociada Señora Rodríguez Rodrí-guez fue aún más lejos al advertir que ella "acogería el recurso presentado como uno de certiorari, paralizaría los procedimientos ante la Junta de Planificación y emitiría contra el Municipio de San Juan una orden de mostrar causa por la cual no debamos revocar la sentencia dictada por el Tribunal de Apelaciones”. Por su parte el Juez Presidente Señor Hernández Denton le hubiera concedido un término de 10 días al Municipio para que expresase su posición. El Juez Asociado Señor Martínez Torres no intervino.

(5) Sec. 1.03 del Reglamento de Zonificación de Puerto Rico (Reglamento de Planificación Núm. 4 de la Junta de Planificación), Reglamento Núm. 6211, Depar-tamento de Estado, 5 de noviembre de 2000, pág. 1. (Aunque ese reglamento fue anulado por el Reglamento Núm. 7511, Departamento de Estado, 28 de mayo de 2008, era el vigente al momento de los hechos).

(6) Introducción del Reglamento de Zonificación de Puerto Rico, id. Véase T-JAC, Inc. v. Caguas Centrum Limited, 148 D.P.R. 70, 81-82 (1999).

(7) Introducción del Reglamento de Zonificación de Puerto Rico, supra.

(8) Art. 11 de la Ley Núm. 75 de 24 de junio de 1975, Ley Orgánica de la Junta de Planificación, 23 L.P.R.A. sec. 62j(5); Sec. 4.04 del Reglamento de Zonificación de Puerto Rico, supra, pág. 47.

(9) T-JAC, Inc. v. Caguas Centrum Limited, supra, pág. 83; Luán Investment Corp. v. Román, 125 D.P.R. 533, 546 (1990).

(10) Luán Investment Corp. v. Román, supra, pág. 545.

(11) Apéndice 1 del Certiorari, pág. 6.

(12) Ley Núm. 170 de 12 de agosto de 1988, Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. see. 2101 et seq.

(13) Tosado v. A.E.E., 165 D.P.R. 377, 389 (2005).

(14) Id. Véase, además, Asociación Maestros v. Comisión, 159 D.P.R. 81 (2003).

(15) íd.

(16) Tosado v. A.E.E., supra, pág. 390. Véase, además, Asoc. Fcias. Com. v. Depto. de Salud, 156 D.P.R. 105 (2002).

(17) González v. E.L.A., 167 D.P.R. 400, 411 (2006).

(18) íd.

(19) íd., págs. 411-412.

(20) Sec. 2.1 de la L.P.A.U., 3 L.P.R.A. see. 2121.

(21) íd.

(22) Sec. 4.04 del Reglamento de Zonificación de Puerto Rico, supra, pág. 47. Véase T-JAC, Inc. v. Caguas Centrum Limited, supra, pág. 84.

(23) Sec. 4.06 del Reglamento de Zonificación de Puerto Rico, supra, págs. 48-50.

(24) íd.

(25) Véanse: T-JAC, Inc. v. Caguas Centrum Limited, supra; Montoto v. Lorie, 145 D.P.R. 30 (1998).

(26) Sec. 4.06 del Reglamento de Zonificación de Puerto Rico, supra, págs. 48-50.

(27) íd., pág. 50.

(28) P.E. Salkin, American Law of Zoning, 5ta ed., Ed. Thomson Reuters/West, 2011, Vol. 1, See. 8:11, pág. 8-29.

(29) Montoto v. Lorie, supra, pág. 44.

(30) 3 L.P.R.A. sec. 2102(j).

(31) El mecanismo de reconsideración le permitiría al Tribunal de Apelaciones evaluar su jurisdicción por primera vez en este caso. De esa forma, el foro apelativo intermedio podría evaluar si el Municipio omitió notificar su recurso a todas las partes con interés.