EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Vur-Jer, LLC.<br><br>Recurrida<br><br>v.<br><br>Junta Reglamentadora de Cannabis Medicinal<br><br>Peticionaria | 2026 TSPR 46<br><br>218 DPR ___ |

Número del Caso: CC-2025-0590

Fecha: 30 de abril de 2026

Tribunal de Apelaciones: Panel V

Representante legal de la parte peticionaria:

    Lcda. Magdalisse Ramos Costa

Representantes legales de la parte recurrida:

    Lcdo. Daniel Martínez Avilés
    Lcdo. Fernando Luis Abreu Arias

Materia: Derecho Administrativo – Facultad de las agencias administrativas de acoger íntegramente el informe del Oficial Examinador asignado al caso y adoptarlo por referencia como parte integral de su resolución final.

Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  | | | |
|---|---|---|---|
| Vur-Jer, LLC.<br><br>Recurrida<br><br>v.<br><br>Junta Reglamentadora de<br>Cannabis Medicinal<br><br>Peticionaria | | CC-2025-0590 | Certiorari |

Opinión del Tribunal emitida por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 30 de abril de 2026.

Hoy nos corresponde evaluar si la decisión de una agencia administrativa de acoger en su totalidad la recomendación contenida en el informe preparado por la oficial examinadora asignada al caso administrativo e incorporar tal informe en su resolución final, por referencia y como parte integral de su determinación, cumple cabalmente con las exigencias establecidas en la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *infra*.

En particular, debemos examinar si esta práctica satisface el deber de la agencia de exponer de forma clara las determinaciones de hecho y las conclusiones de derecho que fundamentan su adjudicación, conforme a la Sección 3.14

de la referida ley, y si ello permite un ejercicio efectivo de la revisión judicial.

A tales efectos, este análisis nos permite pautar el alcance de la facultad delegada a las y los oficiales examinadores en los procedimientos adjudicativos. Asimismo, nos lleva a delimitar la manera en que una agencia administrativa puede acoger e incorporar los informes que estos funcionarios preparan como parte de su recomendación final.

Con base en ello, también determinaremos si, en este caso concreto, el foro apelativo intermedio erró al revocar el dictamen de la Junta Reglamentadora del Cannabis Medicinal por supuestos defectos de forma en su resolución final, y no por los méritos del caso.

A continuación, procedemos a exponer los hechos que dan lugar a esta controversia.

## I

Como contexto del asunto que nos ocupa, Vur-Jer, LLC. (Vur-Jer o parte recurrida) era una compañía de responsabilidad limitada autorizada a realizar negocios en Puerto Rico que obtuvo una licencia para operar un establecimiento de cannabis medicinal. Sus únicos tres accionistas eran la Sra. Gwen Black y los señores Ángel Álvarez Freiría y José J. Berríos Rivera.[1] La licencia se

---

[1] Del expediente se desprende que, la Sra. Gwen Black era la accionista minoritaria con un 20.00% de las acciones de

expidió el 25 de junio de 2018 por la Junta Reglamentadora del Cannabis Medicinal (Junta o parte peticionaria), adscrita al Departamento de Salud de Puerto Rico, bajo el número CM-2018-088. A partir de la expedición de esa licencia inicial, la parte recurrida tramitó las renovaciones correspondientes a los años 2019, 2020 y 2021, las cuales fueron aprobadas por la Junta. La última renovación tuvo vigencia hasta el 25 de junio de 2022.[2]

Durante el proceso de renovación de la licencia en 2022 y tras varias reuniones y comunicaciones entre las partes, el 13 de junio de ese año, Vur-Jer remitió un correo electrónico a la Junta en el cual le solicitó la reconsideración de dos multas administrativas —una de $5,000.00 y otra de $20,000.00— que se le impusieron en otro caso administrativo, identificado con el alfanumérico JRCM-2019-009. Asimismo, le solicitó autorización para efectuar un cambio de dueño, debido a la presunta falta de disponibilidad de la accionista Gwen Black para presentar la renovación de la licencia.[3]

_____

la compañía. Véase Apéndice del *Recurso de certiorari*, pág. 208.

[2] Surge del expediente que la última licencia del establecimiento consigna como fecha de expedición el 25 de agosto de 2021 y como fecha de vencimiento el 25 de junio de 2022. Véase *Licencia de establecimiento de cannabis expedida a Vur-Jer, LLC,* Apéndice enmendado de la *Moción en cumplimiento para subsanar deficiencias* de la parte peticionaria, pág. 78.

[3] Cabe resaltar que, el 24 de mayo de 2022, la Junta sostuvo una reunión con los accionistas Ángel Álvarez

El 30 de septiembre de 2022, la Junta emitió una *Resolución* en la que señaló que la licencia número CM-2018-088 venció el 25 de junio de 2022 sin que Vur-Jer hubiera presentado una solicitud de renovación o, en su defecto, una solicitud de cambio de dueño o de modificación de su estructura organizacional, a tenor de las disposiciones aplicables. Respecto a la solicitud de reconsideración de las multas que suman $25,000.00 en el caso administrativo JRCM-2019-009, la Junta determinó que, dado que no se presentó un recurso de revisión judicial ante el Tribunal de Apelaciones contra la *Resolución* emitida en ese caso el 30 de septiembre de 2020, relacionada con tales multas, la decisión administrativa se consideraba final, firme e inapelable.

En consecuencia, la Junta concluyó que, al no haberse presentado la solicitud de renovación de la licencia previo a su fecha de vencimiento —es decir, antes del 25 de junio de 2022—, y al no haberse sometido ninguna otra petición al amparo de la Ley Núm. 12-2017, *infra*, o del Reglamento Núm. 9038, *infra*, las solicitudes de Vur-Jer resultaban improcedentes. A su juicio, la documentación remitida y las explicaciones ofrecidas por la parte recurrida tampoco la

---

Freiría y José J. Berríos Rivera, así como con su representante legal. En esa ocasión, Vur-Jer presentó y comunicó los mismos planteamientos y solicitudes que luego reiteró en su correspondencia del 13 de junio de 2022. Véase *Informe de la Oficial Examinadora*, Apéndice del *Recurso de certiorari*, pág. 22.

colocaron en posición de evaluar circunstancias extraordinarias que justificaran la presentación tardía de la solicitud de renovación de licencia. Expresó, además, que tal inacción se reflejaba en el impago de las multas, las cuales permanecían pendientes de cumplimiento. Por estas razones, ordenó a Vur-Jer efectuar el pago de las referidas multas dentro de un último término de cinco (5) días y se reservó el derecho de acudir a los tribunales para su cobro.

El 20 de octubre de 2022, Vur-Jer presentó una *Moción de reconsideración y en solicitud urgente de vista administrativa.* En lo concerniente al caso de epígrafe, solicitó que se dejaran sin efecto las multas impuestas en su contra y que se le permitiera presentar, para evaluación expedita, los documentos de renovación de la licencia sin la firma de la accionista Gwen Black.

En la alternativa, requirió que se le concediera la celebración de una vista administrativa, ya que entendía que las razones que justificaban su petición se basaban en hechos que tenía derecho a exponer. Manifestó que lo anterior cobraba mayor relevancia porque, según las disposiciones citadas en la *Resolución* del 30 de septiembre de 2022, existían asuntos de carácter discrecional de la agencia. Entre estos mencionó la evaluación de la procedencia de justa causa ante la ausencia de la firma de la accionista en cuestión en la solicitud de renovación. Añadió que contaba con prueba testifical y documental que necesitaba presentar

con el beneficio de una vista para sustentar de manera completa su posición.

Por último, Vur-Jer presentó un recuento de los sucesos relacionados con la accionista Gwen Black y expuso los argumentos que, a su criterio, justificaban la ausencia de su firma en la solicitud de renovación de la licencia. También relató otros asuntos vinculados con una notificación presuntamente inoficiosa respecto a las multas impuestas en el caso administrativo JRCM-2019-009, la cual, según alegó, viciaba de nulidad el proceso de ejecución de estas.[4]

Tras varios trámites procesales, los cuales incluyeron reuniones entre las partes, asuntos de descubrimiento de prueba, la celebración de una vista administrativa y la presentación de varios recursos ante el foro intermedio sobre la prueba que se utilizaría en las vistas, el 28 de mayo de 2025 la Junta emitió una *Resolución final*. **En esta, expresó que adoptaba el *Informe de la Oficial Examinadora* a cargo del caso, acogía la recomendación contenida en el mismo e incorporaba tal informe por referencia como parte integral de su determinación.**

Cabe mencionar que, en el referido informe, la Oficial Examinadora presentó una relación de hechos relevantes, destacó treinta y siete (37) determinaciones de hecho incontrovertidas, con referencia a los *exhibits* utilizados

---

[4] Debido a que la resolución de la controversia que nos ocupa no requiere detallar esta incidencia procesal, prescindimos de ello en esta etapa del procedimiento.

en el proceso adjudicativo, y desarrolló sus conclusiones de derecho junto con su análisis jurídico. Luego de ese examen integral, recomendó a la Junta denegar la renovación de la licencia de Vur-Jer, debido a que la solicitud no se presentó al menos treinta (30) días antes de su vencimiento ni se incluyó una explicación detallada que justificara su presentación tardía, según exige el Reglamento Núm. 9038, *infra*.

A partir de ello, la Junta razonó que Vur-Jer presentó tardíamente la solicitud de renovación de licencia sin demostrar justa causa, por lo que la agencia quedó impedida de extender la licencia de manera administrativa o atender la solicitud de renovación. Por lo tanto, no le permitió la renovación de su licencia número CM-2018-088 para operar su negocio de cannabis medicinal.

Inconforme, el 30 de junio de 2025, Vur-Jer compareció ante el Tribunal de Apelaciones mediante un *Recurso de revisión judicial*. A través de su escrito, planteó la comisión de varios errores por parte de la Junta relacionados con los méritos de la renovación de la licencia, **los cuales no es necesario precisar para la resolución del presente caso en esta etapa del proceso**. En respuesta, la Junta presentó su *Oposición a recurso de revisión administrativa* el 18 de julio de 2025, en la que negó cometer los errores que la parte recurrida le imputó.

En lo pertinente al recurso de epígrafe, el 5 de agosto de 2025, el foro apelativo intermedio emitió una *Sentencia* en la que revocó el dictamen de la Junta, sin atender los errores señalados ni entrar en los méritos de la controversia. Concluyó que la Junta se limitó en su resolución a incluir una breve narrativa procesal y a adoptar en su totalidad el informe de la Oficial Examinadora, **sin realizar sus propias determinaciones de hecho ni fundamentar de manera independiente sus conclusiones de derecho con base en la prueba del expediente administrativo**, de modo que se demostrara la evaluación de la evidencia, la resolución de conflictos y la correcta aplicación del derecho. Indicó que este proceder le impidió ejercer adecuadamente su función revisora.

A su vez, el Tribunal de Apelaciones precisó que el dictamen recurrido no cumplió con los requisitos legales mínimos para una revisión judicial efectiva, especialmente con lo dispuesto en el Art. 4.2 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *infra*, ni con el Art. 142(B) del Reglamento Núm. 9038, *infra*. Como resultado de lo anterior, se abstuvo de evaluar los errores señalados, revocó el dictamen y devolvió el caso a la agencia para que emitiera una nueva determinación, en observancia de lo indicado.

El 3 de septiembre de 2025, la Junta compareció ante este Tribunal mediante un *Recurso de certiorari*. Adujo que

el Tribunal de Apelaciones erró al revocar la *Resolución final* que emitió el 28 de mayo de 2025 por supuestos defectos de forma. Arguyó que, contrario a lo consignado por el foro intermedio, su dictamen cumplió cabalmente con los requisitos del Art. 4.2 de la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico, *infra*, y del Art. 142(B) del Reglamento Núm. 9038, *infra*.

A su entender, ello se debió a que la Oficial Examinadora rindió un informe detallado con determinaciones de hecho claras y conclusiones de derecho específicas. Explicó que el informe fue discutido en una sesión presencial por el Pleno de la Junta el 7 de mayo de 2025 y que, tras la debida deliberación, sin oposición alguna y contando con el quórum reglamentario requerido, la Junta decidió adoptarlo en su totalidad e incorporarlo por referencia como parte de su *Resolución final*. Además, subrayó que, de haber considerado necesario modificar las determinaciones de hecho o las conclusiones de derecho contenidas en el informe, tenía plena autoridad para hacerlo, como la ha ejercido en otras instancias. También indicó que la decisión incluyó las advertencias legales correspondientes, fue firmada formalmente por el Secretario de la Junta y notificada al día siguiente, el 29 de mayo de 2025. Al acoger ese informe, sostuvo que ejerció plenamente sus facultades adjudicativas y emitió una determinación válida en derecho.

Examinado el recurso de autos, el 5 de diciembre de 2025, notificamos una *Resolución* mediante la cual se le otorgó a Vur-Jer un término de veinte (20) días para mostrar causa por la cual no se debía revocar la *Sentencia* dictada por el Tribunal de Apelaciones y, con ello, conceder lo solicitado por la parte peticionaria. En cumplimiento de este mandato, el 8 de enero de 2026, la parte recurrida presentó su *Oposición a petición de certiorari.*

Así las cosas, estamos en posición de expedir el recurso de epígrafe y proceder a resolver el asunto ante nuestra consideración.

## II

### A

En nuestro ordenamiento jurídico es norma reiterada que las decisiones, órdenes y resoluciones finales de los organismos o agencias administrativas están sujetas a la revisión judicial por el Tribunal de Apelaciones. Art. 4.006(c) de la Ley de la Judicatura de Puerto Rico de 2003, Ley Núm. 201-2003, 4 LPRA sec. 24(y); Regla 56 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B. Véanse, además*, Miranda Corrada v. DDEC et al.,* 211 DPR 738, 745 (2023); *AAA v. UIA*, 200 DPR 903, 910 (2018).

De acuerdo con lo anterior, la Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico (LPAU), Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.*, instaura un procedimiento uniforme para la revisión judicial de la acción

tomada por una agencia, ya sea al adoptar un reglamento o al adjudicar un caso. Véase Exposición de motivos de la LPAU, *supra*. Con este propósito, la ley no solo regula cómo deben tramitarse los procedimientos adjudicativos, sino que también define los distintos tipos de decisiones y órdenes que las agencias pueden emitir. En particular, la Sección 1.3 de la LPAU, 3 LPRA sec. 9603, contiene las definiciones siguientes:

> (g) Orden o resolución — Significa **cualquier decisión o acción agencial de aplicación particular que adjudique derechos u obligaciones de una o más personas específicas, o que imponga penalidades o sanciones administrativas** excluyendo órdenes ejecutivas emitidas por el Gobernador.
>
> (h) Orden o resolución parcial — Significa la acción agencial que adjudique algún derecho u obligación que no ponga fin a la controversia total sino a un aspecto específico de la misma.
>
> (i) Orden interlocutoria — Significa aquella acción de la agencia en un procedimiento adjudicativo que disponga de algún asunto meramente procesal.
>
> […] (Negrilla suplida).

Precisamente, en atención a estos diferentes tipos de órdenes y resoluciones, hemos interpretado que una "orden o resolución final" es aquella que pone fin al caso ante la agencia y tiene efectos sustanciales sobre las partes, similar a una sentencia judicial. *Simpson, Passalacqua v. Quirós, Betances*, 214 DPR 370, 378 (2024); *Depto. Educ. v. Sindicato Puertorriqueño*, 168 DPR 527, 545 (2006).

En esa misma línea, la Sección 3.14 de la LPAU, 3 LPRA sec. 9654, especifica que toda orden o resolución emitida por una agencia administrativa **"deberá incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado"**, así como **"conclusiones de derecho, que fundamentan la adjudicación…"**. (Negrilla suplida).[5] Por tanto, las determinaciones de hecho deben ser lo suficientemente claras y específicas para viabilizar la revisión judicial, mientras que las conclusiones de derecho no pueden limitarse a enunciados generales, sino que deben reflejar cómo se aplicó el derecho a los hechos probados. *Mun. de San Juan v. J.C.A.*, 152 DPR 673, 707-708 (2000); *Misión Ind. P.R. v. J.P.*, 146 DPR 64, 152 (1998).

De nuestro análisis jurisprudencial se desprende que, cuando hemos revocado decisiones administrativas o hemos devuelto casos a las agencias por carecer de determinaciones de hecho o de conclusiones de derecho adecuadas, ello ha ocurrido porque **"no existe base alguna a partir de la cual efectuar una revisión inteligente"**. (Negrilla suplida). *Misión Ind. P.R. v. J.P.*, *supra*, págs. 152-153.

Igualmente, la orden o resolución deberá ser firmada por la jefa o el jefe de la agencia o por cualquier otro

---

[5] El Art. 142 del Reglamento Núm. 9038, *infra*, relativo a la controversia de autos y citado por el Tribunal de Apelaciones en su *Sentencia*, recoge de forma análoga lo consignado en la Sección 3.14 de la LPAU, *supra*.

funcionario autorizado por ley. Sección 3.14 de la LPAU, *supra*. A su vez, deberá advertir el derecho de solicitar reconsideración ante la agencia o de instar el recurso de revisión, según corresponda, ante el Tribunal de Apelaciones. Íd. También deberá informar las partes que deben ser notificadas del recurso de revisión, junto con los términos aplicables. Íd. Una vez se cumpla con este requisito, comenzarán a transcurrir tales términos. Íd.

Por su parte, la Sección 4.2 de la LPAU, 3 LPRA sec. 9672, dispone que toda parte afectada por una orden o resolución final de una agencia, que haya agotado los remedios disponibles ante la propia agencia o el organismo administrativo apelativo correspondiente, puede solicitar revisión judicial ante el Tribunal de Apelaciones dentro de los treinta (30) días siguientes contados a partir de la fecha de archivo en autos de la copia de la notificación de la orden o resolución, o a la fecha aplicable si el plazo se interrumpió por una moción de reconsideración. *Fonte Elizondo v. F & R Const.*, 196 DPR 353, 359 (2016).

**B**

Cabe destacar que la LPAU confiere a las jefas o jefes de agencia la facultad de delegar su función de presidir los procedimientos de adjudicación que se lleven a cabo ante la agencia. Sección 3.3 de la LPAU, 3 LPRA sec. 9643. Véanse, además, *Com. Seg. v. Real Legacy Assurance*, 179 DPR 692, 709 (2010); *Tosado v. A.E.E.*, 165 DPR 377, 385-386 (2005).

El propósito de esta delegación radica en que resulta prácticamente imposible que la jefa o el jefe de una agencia presida todas las vistas administrativas y adjudique todas las controversias presentadas ante su oficina. Por ello, se hace necesaria la delegación de esas funciones para asegurar la eficiencia del proceso administrativo. *Tosado v. A.E.E.*, *supra*, págs. 386-387.

Consecuente con ese propósito, la Sección 3.3 de la LPAU dispone expresamente que

> [t]oda agencia podrá designar oficiales examinadores para presidir los procedimientos de adjudicación que se celebren en ella, los cuales no tendrán que ser necesariamente abogados, particularmente cuando el procedimiento en cuestión es uno informal.
>
> El jefe de la agencia podrá delegar la autoridad de adjudicar a uno o más funcionarios o empleados de su agencia. A estos funcionarios o empleados se les designará con el título de jueces administrativos.
>
> […] 3 LPRA sec. 9643.

En ese marco, la funcionaria o el funcionario que presida la vista adjudicativa preparará un informe para la consideración de la agencia, o emitirá la decisión por escrito si le ha sido delegada la autoridad para ello. Sección 3.13 de la LPAU, 3 LPRA sec. 9653(a).

Acerca de la figura de la oficial examinadora u oficial examinador, hemos expresado que tiene la tarea esencial de adjudicar los hechos en controversia durante la vista evidenciaria. *Com. Seg. v. Real Legacy Assurance*, *supra*, pág. 710. Además, le corresponde recopilar de forma integral la

prueba presentada y, por ende, formar el expediente administrativo. Íd. De ahí la importancia de su función, pues debe garantizar que el expediente refleje adecuadamente la posición de todas las partes. Íd.

El expediente administrativo deberá contener, al menos, lo siguiente:

> (a) Las notificaciones de todos los procedimientos.
> (b) Cualquier orden o resolución interlocutoria dictada antes de la vista.
> (c) Cualquier moción, alegación, petición o requerimiento.
> (d) Evidencia recibida o considerada.
> (e) Una relación de todas las materias de las que se tomó conocimiento oficial.
> (f) Ofrecimiento de prueba, objeciones y resoluciones sobre las mismas.
> (g) Propuestas de determinaciones de hecho y conclusiones de derecho, órdenes solicitadas y excepciones.
> (h) **El memorando preparado por el funcionario que presidió la vista, junto con cualquier transcripción de todo o parte de la vista considerada antes de la disposición final del procedimiento, en aquellos casos en que el funcionario que presidió la vista no tenga facultades de adjudicar.**
> (i) Cualquier orden o resolución final, preliminar o en reconsideración.
>
> […] (Negrilla suplida). Sección 3.18 de la LPAU, 3 LPRA sec. 9658.

Nótese que las partes tienen derecho a que su caso se adjudique sobre la base del contenido de ese expediente administrativo. Íd. En efecto, ese expediente constituye la base exclusiva para la decisión de la agencia, así como para la revisión judicial ulterior. *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 128 (2019); Sección 3.18 de la LPAU, *supra*. Por tal razón, la oficial examinadora u oficial

examinador debe desarrollar un récord claro y transparente, de modo que la adjudicadora o el adjudicador pueda evaluarlo de *novo* sin dificultad. *Com. Seg. v. Real Legacy Assurance*, *supra*, págs. 710-711. Solo así se asegura que la determinación final se tome de manera independiente, objetiva y fundada exclusivamente en un proceso justo y libre de influencias. Íd.

A tenor con lo anterior, esta funcionaria o funcionario está facultado para, entre otras cosas, **emitirle a la adjudicadora o al adjudicador una recomendación sobre la decisión que debe tomar a base de sus determinaciones de hecho y del derecho aplicable**. *Com. Seg. v. Real Legacy Assurance*, *supra*, pág. 711. En esencia, prepara una recomendación sobre cómo debe adjudicarse el caso, cuyo alcance dependerá de lo que disponga el estatuto aplicable o del poder delegado. Íd. Esto responde a que el oficial examinador puede emitir una recomendación o informe inicial dirigido al ente encargado de resolver formalmente el asunto, el cual puede ser aceptado o rechazado. Íd.

Por lo general, la adjudicadora o el adjudicador de la agencia suele otorgar gran deferencia al informe de la oficial examinadora, pues sus recomendaciones gozan de respeto debido a la vasta experiencia que posee sobre los méritos del asunto. Debe recordarse que el oficial examinador es quien delimita los asuntos en controversia, recibe y evalúa toda la prueba, adjudica credibilidad y, en fin,

conforma el expediente sobre el cual el adjudicador basará
su decisión final. Íd., pág. 711.

Con respecto a esto, el Profesor William Vázquez
Irizarry ha explicado, a fin de analizar la interpretación
normativa sobre la figura de estas funcionarias y
funcionarios y la manera en que se adoptan las decisiones
agenciales, que

> [l]a práctica en cuanto al formato de este
> informe y su trámite puede variar de agencia en
> agencia. El contenido mínimo del informe son
> las determinaciones de hecho, aunque es usual
> que también incluya conclusiones de derecho y
> en ocasiones recomendaciones. Hay agencias en
> las cuales el oficial examinador prepara un
> documento completo como el antes descrito y **si
> es acogido por el jefe de agencia se emite el
> mismo como decisión final. Esto podría
> conllevar un simple trámite de cambiarle el
> título al documento, de 'Informe' a 'Resolución
> Final', así como la identificación de quien
> firma. En otras agencias el documento 'Informe'
> queda inalterado y el mismo se convierte en un
> anejo al documento denominado 'Resolución
> Final' que firma el jefe de agencia. Este
> último documento haría entonces referencia a
> que se están incorporando las determinaciones
> de hecho y conclusiones de derecho del oficial
> examinador. Adviértase que en ambos casos el
> jefe de agencia acoge de forma íntegra el
> informe del oficial examinador.** Esto, sin
> embargo, no tiene que ser el caso… (Negrilla
> suplida). W. Vázquez Irizarry, *Derecho
> Administrativo*, 77 Rev. Jur. UPR 783, 802
> (2008).

Por todo lo visto, aunque este funcionario o funcionaria
desempeña un rol fundamental, el jefe o la jefa de la agencia
es quien, en última instancia, implanta la política pública
que rige su administración. En tal sentido, la facultad
decisional del oficial examinador o de la oficial examinadora

se encuentra limitada. *Com. Seg. v. Real Legacy Assurance*, *supra*, pág. 712. Véase, además, G.A. Flores García, *Derecho Administrativo*, 81 Rev. Jur. UPR 541, 554-559 (2012). Así, el jefe o la jefa de agencia puede llegar a sus propias determinaciones y conclusiones, las cuales pasarán a formar parte del contenido de la resolución final. Incluso "puede llegar a una determinación de hecho distinta a la del oficial examinador", siempre que se sustente en evidencia sustancial que obre en el expediente. W. Vázquez Irizarry, *supra*, pág. 804; Sección 4.5 de la LPAU, 3 LPRA sec. 9675. Véase, además, *Rolón Martínez v. Supte. Policía*, 201 DPR 26, 35-36 (2018).

**C**

La Ley para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites (Ley Medicinal), la Ley Núm. 42-2017, 24 LPRA sec. 2621 *et seq.*, provee un marco regulatorio que autoriza el uso del cannabis como alternativa legítima de tratamiento para personas con ciertas condiciones médicas. Véase Exposición de motivos de la Ley Medicinal, *supra*. Concretamente, regula de manera integral todo el proceso relacionado con el cannabis medicinal —desde la investigación y el cultivo hasta la manufactura, los laboratorios, la transportación y la dispensación— mediante un sistema de licencias e identificaciones específicas para cada actividad. Íd.

A esos fines, este cuerpo normativo crea la Junta Reglamentadora del Cannabis Medicinal, adscrita al Departamento de Salud, encargada de administrar el programa de cannabis medicinal en Puerto Rico. Art. 2(k) de la Ley Medicinal, 24 LPRA sec. 2621 inciso (a). Además, la Junta está formada por miembros del gobierno y profesionales nombrados por la Gobernadora o el Gobernador, con experiencia en áreas como la salud, la agricultura, la investigación científica, el desarrollo económico y la seguridad pública, entre otras. Véase Art. 4 de la Ley Medicinal, 24 LPRA sec. 2622.

En lo atinente al caso de autos, la Junta, entre otras funciones, cuenta con la autoridad de "[c]elebrar vistas públicas conforme a su función adjudicativa", así como de "[a]djudicar casos de asuntos bajo su jurisdicción…". Art. 5 de la Ley Medicinal, 24 LPRA sec. 2622a. De la misma manera, está facultada para, "[e]mitir, negar, revocar, suspender, restringir licencias e imponer multas administrativas conforme a las disposiciones de esta Ley [Medicinal] y los reglamentos que promulgue para instrumentar la misma". Íd., inciso (n).

Similarmente, el Art. 7 de esta ley dispone que la Junta "podrá delegar en oficiales examinadores la función adjudicativa de la Junta de presidir las vistas públicas que se celebren". 24 LPRA sec. 2622c. En ese sentido, el citado

artículo señala que los oficiales examinadores y las oficiales examinadoras tendrán autoridad para:

> (1) tomar juramento y declaraciones;
> (2) expedir citaciones, requerir la presentación de informes, libros, papeles y documentos que consideren necesarios para el ejercicio de sus funciones;
> (3) recibir evidencia pertinente y dictaminar sobre ella;
> (4) tomar o hacer tomar deposiciones;
> (5) celebrar vistas públicas y regular el curso de las mismas;
> (6) celebrar y presidir conferencias preliminares para aclaración y simplificación de los asuntos en controversia;
> (7) disponer de instancias procesales o asuntos similares;
> (8) **recomendar decisiones a la Junta; y**
> (9) **ejecutar funciones de autoridad delegada de adjudicación.** (Negrilla suplida) Íd.

Sin embargo, el mismo artículo precisa que "**[l]a labor de estos oficiales examinadores será válida con la aprobación de la mayoría de la Junta**, excepto en los casos donde se le confirió a la Junta la autoridad para delegar al director ejecutivo algún asunto, en cuyo caso la aprobación del director ejecutivo será suficiente". (Negrilla suplida). Íd.

Por otro lado, el Art. 130 del Reglamento para Manejar el Estudio, Desarrollo e Investigación del Cannabis para la Innovación, Normas Aplicables y Límites, Reglamento Núm. 9038 del Departamento de Salud, aprobado el 2 de julio de 2018, especifica que las vistas administrativas serán presididas por un oficial examinador u oficial examinadora. En relación con ello, el Art. 135 establece que este funcionario o funcionaria cuenta con la facultad de someter ante la Junta un informe que resuma los procedimientos

celebrados, incluya las determinaciones de hecho y las conclusiones de derecho, y contenga sus recomendaciones sobre la acción o acciones que, a su juicio, deban tomarse.

Expuesto el derecho pertinente, procedemos a discutir su aplicación a esta controversia.

**III**

Nos corresponde resolver si el Tribunal de Apelaciones erró al revocar la determinación de la Junta y devolver el caso para que la agencia emitiera una nueva resolución, toda vez que concluyó que el dictamen final carecía de determinaciones de hecho y conclusiones de derecho propias e independientes de las contenidas en el informe elaborado por la Oficial Examinadora que presidió el procedimiento adjudicativo, lo que, a su juicio, le impidió ejercer adecuadamente la revisión judicial.

En otras palabras, debemos decidir si el proceder de la Junta al acoger en su totalidad el informe de la Oficial Examinadora e incorporarlo por referencia como parte integral de su resolución final incumplió con las exigencias de la LPAU, *supra*. Ello debido a que el Tribunal de Apelaciones resolvió que la *Resolución final* no contenía determinaciones de hecho claras ni conclusiones de derecho suficientes para permitir una revisión judicial efectiva. De ser así, a la Junta le correspondía elaborar determinaciones de hecho y conclusiones de derecho adicionales, propias e independientes a las consignadas por la Oficial Examinadora.

Tras un análisis detallado de la documentación del caso y de la normativa aplicable, coincidimos con la parte peticionaria. Veamos.

A modo de repaso, tras diversos trámites relacionados con la denegación de la solicitud de renovación de la licencia número CM-2018-088 para operar el establecimiento de cannabis medicinal Vur-Jer —que incluyeron reuniones entre las partes de epígrafe, asuntos de descubrimiento de prueba, y la celebración de una vista administrativa—, la funcionaria asignada al caso emitió su *Informe […]* el 6 de mayo de 2025.

Posteriormente, la Junta emitió su *Resolución final* el 28 de mayo de 2025. Como parte esencial de su dictamen, acogió íntegramente el referido informe y consignó de manera expresa lo siguiente:

> **El 7 de mayo de 2025, la Junta, contando con el quórum reglamentario requerido, atendió el informe rendido por la Oficial Examinadora, Lcda. Ramagui Rivera De Jesús, con fecha del 6 de mayo de 2025. En atención a dicho Informe, se acoge y se adopta la recomendación en el mismo, el cual se incorpora por referencia y forma parte integral de la presente Resolución.** (Negrilla suplida).[6]

Acto seguido, la Junta incluyó las advertencias legales sobre la disponibilidad y el plazo para presentar una solicitud de reconsideración, conforme al Art. 143 del Reglamento Núm. 9038, *supra*. De igual modo, informó sobre

---

[6] Véase *Resolución final*, Apéndice del *Recurso de certiorari*, pág. 12.

las advertencias y el término para interponer un recurso de revisión judicial ante el Tribunal de Apelaciones, de acuerdo con las Secciones 3.15 y 4.2 de la LPAU, *supra*.

En la disposición final de la *Resolución*, junto con la firma del Secretario, Agro. Irving Rodríguez, fue acreditada la anuencia y participación con quorum de los miembros de la Junta.[7]

Como consecuencia de lo anterior, a Vur-Jer no se le permitió la renovación de su licencia número CM-2018-088 para operar su dispensario de cannabis medicinal, toda vez que se concluyó que presentó tardíamente la solicitud de renovación sin demostrar justa causa, lo que impidió que la agencia le extendiera la licencia de manera administrativa o atendiera su solicitud de renovación, en virtud de la Ley Medicinal y del Reglamento Núm. 9038.

Ante este escenario, el 30 de junio de 2025, Vur-Jer sometió un *Recurso de revisión judicial* ante el Tribunal de Apelaciones. En su escrito, planteó la comisión de diversos errores por parte de la Junta relacionados con los méritos de la renovación de la licencia número CM-2018-088. Entre estos errores no se alegó que la *Resolución final* de la Junta careciera de determinaciones de hecho o conclusiones de derecho claras, según lo exige la Sección 3.14 de la LPAU, *supra*. Por su parte, la Junta negó cometer los errores imputados.

---

[7] Íd., pág. 13.

En este contexto, el 5 de agosto de 2025, el Tribunal de Apelaciones emitió una *Sentencia* en la que expresó lo siguiente:

> **[L]a Junta se limitó a incluir una breve narrativa de los hechos procesales y adoptó en su totalidad el informe presentado por la licenciada Rivera, sin realizar sus propias determinaciones de hechos ni fundamentar de manera independiente sus conclusiones de derecho** con base en la prueba contenida en el expediente administrativo.
>
> **El proceder antes expuesto impide que este foro pueda ejercer su función revisora de forma adecuada.** Para que un Tribunal pueda revisar una determinación administrativa, es indispensable que la agencia exponga determinaciones de hechos claras y específicas, así como conclusiones de derecho debidamente fundamentadas. Estas deben demostrar que la agencia evaluó la prueba, resolvió los conflictos y aplicó correctamente el derecho a los hechos acreditados. Las decisiones no pueden ser *pro forma* ni limitarse a reproducir normas generales…
>
> […](Negrilla suplida).[8]

Sobre ese respecto, indicó que el dictamen de la Junta no cumplió con los requisitos legales mínimos para permitir una revisión judicial efectiva, especialmente con lo dispuesto en el Art. 4.2 de la LPAU, *supra*,[9] y en el Art.

---

[8] Véase *Sentencia*, Apéndice del *Recurso de certiorari*, pág. 8.

[9] Conviene aclarar que, de manera incorrecta, el Tribunal de Apelaciones sugiere en su *Sentencia* que la Sección 4.2 de la LPAU, *supra*, regula los requisitos que debe cumplir una resolución final en cuanto a determinaciones de hecho y conclusiones de derecho, cuando en realidad ello surge de la Sección 3.14 de la LPAU, *supra*. Por su parte, la Sección 4.2 establece los términos y condiciones para interponer un recurso de revisión judicial.

142(B) del Reglamento Núm. 9038, *supra*. **Como resultado de lo anterior, el Tribunal de Apelaciones se abstuvo de considerar los señalamientos de error, revocó el dictamen de la Junta y devolvió el caso a la agencia para que emitiera una nueva determinación conforme a lo allí expuesto.**

El 3 de septiembre de 2025, la Junta acudió ante este Tribunal mediante un *Recurso de certiorari*. Sostuvo que el foro apelativo intermedio erró al revocar la *Resolución final* por supuestos defectos de forma, al entender que carecía de determinaciones de hecho y conclusiones de derecho propias de la Junta e independientes de las de la Oficial Examinadora. Argumentó que, contrario a lo consignado por el Tribunal de Apelaciones, su dictamen cumplió plenamente con los requisitos legales aplicables. **Es sobre esta cuestión que corresponde a este Tribunal pronunciarse y resolver.**

Es menester recalcar que la Sección 3.14 de la LPAU, *supra*, establece que toda orden o resolución emitida por una agencia administrativa **"deberá incluir y exponer separadamente determinaciones de hecho"**, así como **"conclusiones de derecho, que fundamentan la adjudicación…"**. (Negrilla suplida). De manera análoga, el Art. 142(B) del Reglamento Núm. 9038, *supra*, dispone lo mismo.

En ese sentido, **es norma reiterada que las determinaciones de hecho de las agencias administrativas deben ser lo suficientemente claras y específicas para permitir la revisión judicial, mientras que las conclusiones**

**de derecho no pueden limitarse a enunciados generales, sino que deben demostrar cómo se aplicó el derecho a los hechos probados.** *Mun. de San Juan v. J.C.A.*, *supra*, págs. 707-708; *Misión Ind. P.R. v. J.P.*, *supra*, pág. 152.

Asimismo, la revocación de una decisión administrativa por falta de determinaciones de hecho o conclusiones de derecho adecuadas procede cuando "**no existe base alguna a partir de la cual efectuar una revisión inteligente**". *Misión Ind. P.R. v. J.P.*, *supra*, págs. 152-153. **Sin embargo, resolvemos que ello no ocurre en el presente caso.**

De entrada, sin prejuzgar los méritos de la determinación final sobre la renovación de la licencia número CM-2018-088, del expediente se desprende que el informe está estructurado de manera ordenada y sistemática. En la sección titulada "Trasfondo", contiene un resumen de los datos generales relacionados con la compañía Vur-Jer, así como de acontecimientos que ocurrieron desde que esta entidad obtuvo su licencia en el 2018 hasta el 29 de julio de 2022, fecha en la que se produjo una comunicación escrita entre las partes de epígrafe.[10]

Seguidamente, se incorporó una parte denominada "Relación procesal relevante". En esta, se expusieron cuarenta (40) hechos procesales que se consideraron significativos, ocurridos a partir del 30 de septiembre de

---

[10] Véase *Informe de la Oficial Examinadora*, Apéndice del *Recurso de certiorari*, págs. 15-17.

2022 —fecha en que se notificó oficialmente a Vur-Jer el vencimiento de su licencia para operar su dispensario de cannabis medicinal— hasta el momento en que la parte recurrida decidió someter el caso por el expediente durante el último día de la vista administrativa en su fondo.[11]

Luego, en la sección identificada como "Determinaciones de hecho", están plasmadas treinta y siete (37) determinaciones de hecho incontrovertidas, con referencia a los *exhibits* presentados durante el proceso adjudicativo.[12] En la sección subsiguiente, titulada "Determinaciones de derecho y análisis", están contenidas las conclusiones jurídicas junto con el análisis correspondiente.[13]

Finalmente, la Lcda. Ramagui Rivera De Jesús incluyó una sección de "Recomendación" en la cual propuso a la Junta sostener la determinación de denegar la renovación de la licencia de Vur-Jer, notificada el 30 de septiembre de 2022, debido a que la solicitud fue radicada de manera tardía. Precisamente, esta funcionaria está facultada estatutariamente para, entre otras cosas, emitirle al adjudicador de la agencia una recomendación sobre la decisión que debe tomar con base en sus determinaciones de hecho y en el derecho aplicable. *Com. Seg. v. Real Legacy Assurance*,

---

[11] Íd., págs. 17-20.

[12] Íd., págs. 21-25.

[13] Íd., págs. 25-29.

*supra*, pág. 711; Sección 3.3 de la LPAU, *supra*; Art. 7 de la Ley Medicinal, *supra*; Art. 135 del Reglamento 9038, *supra*.

Con posterioridad a la reunión celebrada el 7 de mayo de 2025, el Pleno de la Junta decidió acoger en su totalidad el informe de la Oficial Examinadora, adoptándolo por referencia y como parte integral de su *Resolución final.* Como se ha señalado previamente, el adjudicador de la agencia suele conceder gran deferencia al informe de la Oficial Examinadora, dado que sus recomendaciones gozan de respeto por la vasta experiencia que esta posee sobre los méritos del asunto. *Com. Seg. v. Real Legacy Assurance*, *supra*, pág. 711. **Esto fue exactamente lo que ocurrió en el presente caso: la Junta, luego de una deliberación, otorgó entera deferencia al informe de la Oficial Examinadora, la Lcda. Ramagui Rivera De Jesús.**

Debe recordarse que la Oficial Examinadora delimita los asuntos en controversia, recibe y evalúa toda la prueba, adjudica credibilidad y, en fin, conforma el expediente administrativo sobre el cual el adjudicador basará su decisión final. Íd., págs. 710-711.

De hecho, la Junta actuó de manera consecuente con lo señalado por el Profesor Vázquez Irizarry, quien ha indicado que existen agencias en las cuales el Oficial Examinador prepara un informe y, si es acogido por el jefe de la agencia, este se emite como decisión final. W. Vázquez Irizarry, *supra*, pág. 802.

En tales casos, resolvemos que no existe impedimento para que el informe se incorpore sin modificaciones como anejo al documento denominado "Resolución final", el cual hará referencia a que se integran las determinaciones de hecho y conclusiones de derecho del Oficial Examinador. Íd.

Ahora bien, lo anterior no implica que la adopción íntegra del informe del Oficial Examinador sea la única vía posible. El jefe o la jefa de la agencia, o el organismo agencial autorizado estatutariamente para ello, puede formular sus propias determinaciones de hecho y conclusiones de derecho, las cuales pasarán a formar parte del contenido de la resolución final. En este sentido, incluso puede arribar a una determinación de hecho distinta a la del informe del Oficial Examinador, siempre que esa determinación se sustente en la evidencia sustancial que obra en el expediente. W. Vázquez Irizarry, *supra*, pág. 804; Sección 4.5 de la LPAU, *supra*. Véase, además, *Rolón Martínez v. Supte. Policía*, *supra*, págs. 35-36.

No obstante, concluimos que las agencias administrativas también cuentan con la facultad de acoger íntegramente el informe del Oficial Examinador y adoptarlo por referencia como parte integral de su resolución final, siempre y cuando contenga todos los requerimientos exigidos por ley, así como los aquí discutidos. **Es decir, bajo cualquiera de las modalidades en que se recojan las determinaciones de hecho y conclusiones de derecho,**

**corresponde al adjudicador asegurarse de que la decisión adoptada sobre la base del informe esté debidamente sustentada en la evidencia contenida en el expediente administrativo.**

En el presente caso, según consta en la *Resolución final*, luego de la reunión en Pleno del 7 de mayo de 2025, la Junta revisó el *Informe de la Oficial Examinadora* y decidió acoger íntegramente sus recomendaciones, incorporándolas por referencia como parte integral de su determinación final.

Por ello, sin prejuzgar los méritos de la controversia relativa a la denegación de la licencia, resolvemos que el *Informe de la Oficial Examinadora*, adoptado de manera íntegra y por referencia en la *Resolución final*, contiene determinaciones de hecho y conclusiones de derecho suficientes para que el Tribunal de Apelaciones pueda ejercer adecuadamente su revisión judicial.

## IV

En vista de lo anterior, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y se remite el caso a este foro para que atienda en los méritos el *Recurso de revisión judicial* instado por Vur-Jer.

Se dictará Sentencia en conformidad.

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Vur-Jer, LLC.<br><br>Recurrida<br><br>v.<br><br>Junta Reglamentadora de<br>Cannabis Medicinal<br><br>Peticionaria | CC-2025-0590 | <u>Certiorari</u> |

Sentencia

En San Juan, Puerto Rico, a 30 de abril de 2026.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente Sentencia, se revoca la *Sentencia* emitida por el Tribunal de Apelaciones y se remite el caso a este foro para que atienda en los méritos el *Recurso de revisión judicial* instado por Vur-Jer.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo